HOMER O. HITCHCOCK, IMPLEADED WITH WILLIAM T. STILL-
WELL V. ROBERT BURGETT.

*Physicians—Liability for injuries from want of skill—Expert
testimony.*

In an action against a surgeon for want of skill, defendant claimed
that plaintiff at a certain time had thrown off his splints and
walked on crutches. Plaintiff being asked if he had not caused
one of the hospital nurses to write to that effect to a specified
person, said he did not remember. *Held* proper for the purpose
of identifying the writer to ask him farther whether he had not
afterwards caused the person said to have been addressed to
write to the nurse.

In an action for injury from a surgeon's negligence, it is proper for
the defense to show that it resulted from plaintiff's imprudence
in throwing off his splints and going on crutches, but that fact
cannot be shown by the statements of one who had no personal
knowledge of it.

In an action for injury resulting from a surgeon's unskillfulness in
treating a dislocation as a fracture, it was shown that if his
diagnosis was correct, a grating sound would have been heard
on manipulation of the limb. *Held* that evidence could be given
of remarks made by bystanders at the time of the examination
tending to show that they heard such a sound.

Counsel who see fit on cross-examining a defendant to bring out
evidence of purely collateral matters not in the case, are bound
by his answers, which are conclusive.

A physician cannot be asked his opinion as to the cause of an injury,
judging merely from the condition in which he found the patient,
and without any knowledge as to how it took place.

An expert cannot give an opinion based on his personal examination
unless the facts on which the opinion is founded are all stated;
and it must be limited to these facts and exclude all others, even
though there are others within his knowledge.

A bill of exceptions that gives the name of each witness and states
that "being duly sworn, he testified in substance as follows,"
closing the statement of his testimony with the words "and the
testimony being here closed," is presumed to contain all the
evidence bearing on the questions raised.

If a family doctor or railway surgeon on leaving town recommends,
in case of need, some other physician, who is not however in
any sense in his employment, it does not make him liable for

injuries resulting from the latter's want of skill in case he should be employed.

A physician must exercise reasonable skill, taking into account the advancement of professional learning, but a charge that he must exercise such skill as is ordinarily exercised by educated physicians, without farther defining it, is incorrect.

Error to Kalamazoo. Submitted January 24 and 25. Decided April 3.

TRESPASS ON THE CASE. Defendant Hitchcock brings error.

· *Severens, Boudeman & Turner* for plaintiff in error. A by-stander's remark called forth by hearing *crepitus* in setting a limb is admissible as *res gestæ*, 1 Greenl. Ev., § 108; *G. & C. Union Ry. Co. v. Fay*, 16 Ill., 558; *Angell v. Rosenbury*, 12 Mich., 257; experts cannot testify as to the truth of evidence, *White v. Bailey*, 10 Mich., 162; *Underwood v. Waldron*, 33 Mich., 234; *Carpenter v. Blake*, 2 Lans., 206; *Reynolds v. Robinson*, 64 N. Y., 595; *Kay v. Thompson*, 10 Am. Law Reg. (N. S.), 594; *Muldowney v. Illinois Central R. R.*, 39 Ia., 622; *U. S. v. McGlue*, 1 Curtis, 1; *Sills v. Brown*, 9 C. & P., 601; 1 Greenl. Ev., § 440; Elwell's Malpractice, 277; McClelland's Civil Malpractice, 40, 323–6; the skill required by law from physicians and surgeons is the reasonable and ordinary skill and diligence possessed by the profession as a body, and not that of any specified class, *Smothers v. Hanks*, 34 Ia., 286; *Almond v. Nugent*, 34 Ia., 300; *Leighton v. Sargent*, 27 N. H., 460; *Reynolds v. Graves*, 3 Wis., 416; *Bellinger v. Craigue*, 31 Barb., 534; *Howard v. Grover*, 28 Me., 97; *Simonds v. Henry*, 39 Me., 155; *Patten v. Wiggin*, 51 Me., 594; *Landon v. Humphrey*, 9 Conn., 209; *Wood v. Clapp*, 4 Sneed, 65; *Briggs v. Taylor*, 28 Vt., 180; *McNevins v. Lowe*, 40 Ill., 209; *Tefft v. Wilcox*, 6 Kan., 46; *Branner v. Stormont*, 9 Kan., 41; *Lanphier v. Phipos*, 8 C. & P., 475; *Rich v. Pierpont*, 3 Fost. & Fin., 35; Shearman & Redf. Negl., § 434; McClelland's Civil Malpractice, 521; no presump-

tion of want of skill rises from a failure to cure, *Haire v. Reese*, 7 Phil., 138; a cure is not warranted unless by special contract; *Hancke v. Hooper*, 7 C. & P., 81.

*Powers & Daniels* and *Arthur Brown* for defendant in error. Any testimony that could be given by a witness who has testified that he knows nothing of the matter from his own knowledge, would be hearsay, *Hamilton v. People*, 29 Mich., 173; the degree of skill required from a physician is discussed in 3 Bl., Com., 165; 8 Alb. L. J., 18; *Gramm v. Boener*, 56 Ind., 497; *Long v. Morrison*, 14 Ind., 595; *McCandless v. McWha*, 22 Penn. St., 261; *Ritchey v. West*, 23 Ill., 385; *Wilmot v. Howard*, 39 Vt., 447; *Gallaher v. Thompson*, 1 Wright (O.), 466; *Courtney v. Anderson*, McClelland's Civil Malpractice, 273; contributory negligence does not excuse a defendant if his own negligence was the proximate cause of the injury, *Williams v. Mich. Cent R. R.*, 2 Mich., 259; *L. S. & M. S. R. R. v. Miller*, 25 Mich., 274; *Wilds v. Hudson River R. R.*, 24 N. Y., 430; *Callahan v. Warne*, 40 Mo., 131; *Walsh v. Miss. &c. Co.*, 52 Mo., 434; *Lindsey v. Danville*, 45 Vt., 72; *Newhause v. Miller*, 35 Ind., 463; *Sleeper v. Sandown*, 52 N. H., 244; *Sutton v. Wauwatosa*, 29 Wis., 21; *Stiles v. Geesey*, 71 Penn. St., 439.

MARSTON, J. This was an action of trespass on the case to recover damages for alleged negligence and want of skill of defendants who were surgeons, in their treatment of a severe injury to plaintiff's hip.

Errors are assigned based upon the ruling of the court in relation to the admissibility of certain evidence, and these questions will first be considered.

It was claimed on the part of the defendants that plaintiff soon after being taken to Detroit, threw off the splints, got up and walked about on crutches. He was asked if he had not caused a letter to be written to Frank Curtis by one of the hospital nurses in Detroit to that effect, and replied thereto that he did not remember.

He was then asked if he did not, after his return to Kalamazoo, cause Curtis to write to this same person. This was objected to and the objection sustained. The question was asked for the purpose of identifying the. person who had written the letter, if any, for him in Detroit, and for this purpose the question was proper and the witness should have been permitted to answer.

Dr. Walker, a witness, was asked if he remembered on one occasion when the plaintiff got up and threw off his splints, and replied that he did not of his own knowledge. He was then asked if in a conversation with Dr. McGraw at Detroit he did not state to him 'that shortly after Burgett went to Detroit he threw off his splints and got up unbeknown to them who had charge of him.' This was objected to, when counsel in reply to a question asked by the court, stated this question was asked for the purpose of showing what course the plaintiff himself took with reference to this injury,—to show in other words how a displacement might very easily have occurred. While it would have been proper to show that a displacement had or might have occurred in this way, yet the fact of the plaintiff's getting up could not be proven in this manner. The witness having no personal knowledge of the fact, his statements upon that subject to others for the purpose claimed would be inadmissible.

John Blaney was present at the time Dr. Stillwell first examined the plaintiff, and assisted the doctor on that occasion. It became and was a material question on the trial, whether the injury was a dislocation of the hip joint with a fracture of the lower posterior rim of the acetabulum, or, as stated by others, a dislocation of the femur with the head of the bone in the ischiatic notch, or a fracture of the neck of the femur with the leg driven backwards. Dr. Stillwell concluded that. the injury was a fracture of the neck of the femur, and acted accordingly, although it seems the treatment in either case would be very much alike. The expert tes-

timony was that if after such an accident the surgeon on examination and manipulation of the limb should get distinct crepitus, that would be positive evidence of a fracture, and the probable fracture would be the neck of the femur or of the acetabulum, and that the diagnosis in such cases is extremely difficult. Blaney testified that when Dr. Stillwell removed plaintiff's clothing and examined the leg, that he (witness) heard a grating noise when the doctor moved the leg; that somebody, standing by spoke of it. He was then asked what did they say about it. This was objected to as hearsay and excluded. This evidence should have been admitted. It was important to ascertain whether there was heard at the time such distinct crepitus as would justify Dr. Stillwell in treating it as a case of fracture and not dislocation. While those present on their attention having been called to it, may have remembered or imagined that they heard such a noise, no such uncertainty could exist at the time, when the noise was so distinctly heard as to be the subject of comment or remark by those present. The remarks made on such an occasion are not statements of a past transaction, but of one actually taking place at the time they are being made. Such remarks are likely to call the attention of others present to the sounds heard, and to correctly determine the nature and character of them, and how they are caused or from whence they proceed, and cause a deeper and better impression to be made upon the minds of those present as to what was actually heard. *Detroit & Milwaukee R. R. Co. v. Van Steinburg*, 17 Mich., 107.

The testimony of the witness Mason should not have been admitted. This whole matter was collateral to the question at issue, and if counsel thought proper to examine Dr. Hitchcock in reference thereto, his answers were conclusive, and they were bound by them. Besides the evidence of Mason did not fairly tend to show that Dr. Hitchcock had not in fact received the information he claimed to have, but rather that if he had, it was

38 MICH.—64.

untrue. This could not affect the doctor, who did not claim that the information he received was true, but that he had been so informed.*

Dr. Webber, a physician and surgeon, was examined as a witness on the part of the plaintiff and testified to having made an examination of the plaintiff in the fall of 1873 at St. Luke's hospital in the city of Detroit, and as to the condition in which he then found him. He ·was then asked: "Assuming that ·the leg was in good condition prior to the accident, what should you say to be the cause of the difficulty, as you found the patient last?" The objection made to this was that the witness could not answer the question without assuming certain

---

*Dr. Hitchcock had given the following testimony on cross-examination:

"It was brought to my knowledge at one time that Mr. Germaine Mason had charge of this case as attorney for Burgett; I did not object to his bringing this action,—I think I made an objection, not particularly to the officers of the railroad company, but I hoped it would reach them, because I had ground of objection; I did not tell the officers of the company and protest against his bringing this action against me. I talked with Mr. Mason on the subject of the suit; Mason was acting as one of the attorneys for the Michigan Central Railroad, and I was then surgeon of the road."

On re-direct examination he testified:

"I wrote the individual referred to that I was prepared to show by two individuals that Mr. Mason, acting as attorney for the Michigan Central Railroad Company had also acted as the attorney of the individual who claimed to have an action against the Michigan Central Railroad Company, and had settled with them for $2600 upon the basis that he should receive 33⅓ per cent of it all."

On re-cross-examination he testified:

"The person I made the communication to was Dr. Jenks of Detroit, one of the officers of the road; he was not then surgeon-in-chief."

On farther cross-examination he testified that he had a talk with Mr. Mason about the time this suit was commenced; that Mr. Mason sent for him to come to his office.

"Did you not at that time say to him, you being in the employ of the Michigan Central Railroad Company, and he also, that there would be trouble if he went on with the case?"

"I did not."

Mr. Mason was called as a witness by plaintiff's counsel, Mr. Brown, who said:

"If you have any statement in regard to your connection with the case of Burgett against the doctors and against the Michigan Central railway company, you make it, confining yourself to the matter which Dr. Hitchcock testified about.

The Court. "You mean the matter of the conversation between them detailed by him with Mr. Mason."

Mr. Brown. "Not only that, your Honor, but with regard to

facts, and such facts it would be necessary to know in order to understand the value of the opinion. This objection was well taken. The witness was asked to give an opinion as to the cause of the particular difficulty under which the plaintiff was laboring at the time the witness made the examination in the fall of 1873. And it appeared also that the manner in which the plaintiff originally received the injury was known to the witness. Even in cases where experts are called upon to give an opinion based upon their own personal observation or examination, the facts upon which the opinion is founded must all be stated; otherwise the witness might be giving an opinion which would have great

---

the matter which Dr. Hitchcock stated in his letter to Dr. Jenks."

Mr. Severens (of defendant's counsel). "As I understand it, it is about Mr. Mason's share or participation in the settlement between the Michigan Central railway company and Burgett,"

The Court. "I don't see how that would be material here."

Mr. Brown. "I will confine it to a question or two, your Honor."

"Did you ever share in any manner in anything that Mr. Burgett may have received from the Michigan Central railway company?"

Mr. Turner (of defendant's counsel). "We object to it as immaterial."

Mr. Brown. "Dr. Hitchcock said that he had, and I propose to show that is not true, and I offer it for that purpose and with this view, your Honor; the testimony was enquired of Dr. Hitchcock for the purpose of showing the improper means he had taken to defend himself in this case; we sought to show on the cross-examination of that gentleman that he had made charges against a man for threatening to bring this action, for being employed by Mr. Burgett against him; charges which I now propose to show were false when he made them."

Mr. Turner. "If your Honor please, Dr. Hitchcock did not state in his testimony that Mr. Mason had made such settlement, or had received such share, but that he had written to an officer of the company that he had been informed that Mr. Mason had acted for Burgett in the settlement and received a share of the money received from the company, and in any event the matter is irrelevant and immaterial and was drawn out on cross-examination against our objection."

The objection was overruled, and counsel for defendants excepted.

"Did you receive anything from Mr. Burgett as payment for your services or advice or assistance in any manner against the Michigan Central railway company?"

Mr. Mason. "Never, sir; nor never was any allusion made to anything of the kind; I never heard of it until I heard it rumored by the statement of Dr. Hitchcock; it is a most unjust, false and cruel statement towards me; I had a conversation at one time with Dr. Hitchcock with regard to my being employed in the case; it was at my office; Dr. Stillwell was present; Hitchcock raised the question of my acting as the attorney against him while he was surgeon of the road."

weight with the jury upon a state of facts very different from those found by them in the case on trial. The value of the opinion, in other words, must depend very largely upon the facts on which it is based. And there is or may be, I suppose, such a thing as a difference of opinion amongst experts, arising upon the same state of facts. The facts therefore should always be stated, so that others may not only be able to determine the correctness of the opinion given, but that the jury may ultimately determine the truth or falsity of the facts stated, and thereby be enabled to give to the opinion the importance it is justly entitled to. *Beaubien v. Cicotte*, 12 Mich., 501; *Kempsey v. McGinniss*, 21. Mich., 138.

The question asked in this case was not so framed as to confine the witness in giving an opinion, to the facts he had previously testified to, and to exclude all other influences, or knowledge that he might have possessed. *Underwood v. Waldron*, 33 Mich., 235. The mere fact that the answer did not go to the whole case, but only a portion of it, could not, as claimed, make any difference. The portion to which this did go was material, and if such a distinction could be drawn, but little protection could be afforded from an enforcement of the rule.

We now come to some of the more important and indeed the principal questions in the case, and a question is presented at the outset, whether there was any evidence in the case under which Dr. Hitchcock could be held or found liable. On the part of the plaintiffs in error it is claimed that the entire evidence bearing upon this part of the case is incorporated in the bill of exceptions, while on the part of the defendant this is denied.

The bill of exceptions is made up by taking each witness, apparently in the order in which they were examined, stating by whom called, followed by the name of the witness, "who being duly sworn, testified in substance."—and then giving the substance of the testimony

of the witness. After setting forth in this manner the testimony of each witness substantially, then follows the statement "and the testimony being here closed," etc. We must therefore within the previous decisions of this court assume that all the evidence bearing upon this question is sufficiently set forth in the bill of exceptions. *Atlas Mining Co. v. Johnston,* 23 Mich., 46; *Hewitt v. Begole,* 22 Mich., 34; *Carter v. Snyder,* 27 Mich., 486; and *Shaw v. Hoffman,* 25 Mich., 170.

The evidence bearing upon this branch of the case was as follows: "Counsel for plaintiff, to further maintain said issue, called as a witness, George E. Curtis, who testified that in 1873 he was superintendent of the South Haven branch of the Michigan Central railroad; that Dr. Hitchcock was surgeon of the road; that when Burgett was hurt, Hitchcock was out of town; that previous to his going he had stated to witness that if anything happened, Stillwell would look after it for him; that witness accordingly sent for Stillwell; don't know as Dr. Stillwell said anything about taking Hitchcock's place." I can find no evidence tending to show that Dr. Hitchcock had, previous to the time plaintiff was injured, requested Dr. Stillwell to attend to any such cases, or that Dr. Stillwell had agreed so to do. Nor as the case stands should I consider such a request very material. It also appeared that on the third or fourth day after the injury Dr. Hitchcock returned, and being surgeon of the railroad took charge of the case; that Dr. Stillwell objected to leaving the case, and the plaintiff was also averse to his leaving, but Stillwell turned the case over to Dr. Hitchcock "upon an arrangement being made that they should remove the temporary dressings, and make a careful examination of the case, as soon as the swelling had abated so it could be done." This was fixed for the ninth day, which was the time that the patient was removed to Detroit.

Counsel for defendants requested the court to charge the jury: "If the jury find that one of the defendants

was guilty of negligence, that is, did not use ordinary skill and diligence in the treatment of plaintiff, and that the other defendant was not guilty of such negligence, then the jury should acquit the defendant whom they find not guilty." This was refused, but the court submitted the case to the jury upon the theory that if they found Hitchcock was surgeon of the road, in whose employ plaintiff· was at the time of the injury, and that as such surgeon it was his duty to attend upon the employees of the road when injured; that in his absence he had requested Dr. Stillwell to attend any cases on the road for him, and for that reason Stillwell was called, and the plaintiff suffered from the negligence or unskillful management of Stillwell, defendants would be jointly liable for the damages resulting from such negligence or want· of skill; that with the exception of the employment of Stillwell by Hitchcock in the manner suggested by the court, each would only be liable for his own acts.

This refusal to charge, and the charge as given, cannot under the evidence in this case be sustained. We are of opinion that the bill of exceptions fails to set forth any evidence fairly tending to show an employment of Dr. Stillwell by Dr. Hitchcock, or any such relationship existing between them, growing out of either Dr. Hitchcock's position as surgeon of the road and what he had said to the superintendent, or otherwise, under which he could properly be held liable for the negligence or unskilfullness of Dr. Stillwell. Taken at the best, the statement made by Dr. Hitchcock to the superintendent of the road, was but a mere recommendation, in no way binding the company to call Dr. Stillwell, or the latter to respond if called upon. Dr. Stillwell in treating the plaintiff was not acting for Dr. Hitchcock but for the railroad company, and was afterwards paid for his services by the company. It was right and proper that the physician of the company when about to be absent for a few days should inform the company of his pro-

posed absence and recommend some other person to take his place, should occasion require, until his return. This would be equally true of a family physician about to go away for a short time. There would be nothing more natural or proper than for him, before going away, to give notice of the fact and recommend some suitable person to be called during his absence. Yet no one would think of considering the person so recommended, if called, as acting under the employment of the physician who recommended him. It is not claimed that there was any express agreement between Stillwell and Hitchcock under which the latter agreed to pay the former for any such services as he might be called upon to perform. And certainly the facts as appearing upon this record would not raise an implied promise.

If Dr. Stillwell was not, in his treatment of the plaintiff, acting under such relations with Dr. Hitchcock as would render the latter responsible for his negligence and want of skill, if there were any such, then we can see no evidence under which Dr. Hitchcock could be held responsible at all. There is no evidence of any negligence or want of skill or care on the part of Dr. Hitchcock after his return and before the arrival of Dr. Walker from Detroit. If at the time of Dr. Walker's arrival the dislocation, if such it was, had not been properly reduced, that must have been the fault of Dr. Stillwell and not that of Dr. Hitchcock. If Dr. Hitchcock was guilty of negligence in not making a more thorough examination of the patient on his return, how much stronger may such an argument be used against the Detroit physicians, who made no thorough examination for some four weeks after the patient had been under their care, and not until he had called their attention to the discovery he had made. The fact is, as the case is presented upon this record, the Detroit physicians and Dr. Hitchcock, acting from all the information they had received from Dr. Stillwell and from the examinations which they made and considered sufficient, were justified in concluding

that the treatment of Dr. Stillwell had been correct. The removal of the patient to Detroit, his freedom from severe pain during the journey and afterwards, all tend to the same conclusion, and to show that some important facts must have existed in the case which were not brought out on the trial.

Other errors appear in the record, notably so that portion of the charge that the reasonable skill required to be exercised by a physician or surgeon is such as educated physicians or surgeons ordinarily exercise, taking into account the advanced state of the profession. That the advanced state of the profession should be considered was correct, but that the reasonable skill required is such as educated physicians ordinarily exercise, was requiring and laying down too high a test. This was singling out a particular branch, even after taking into account the advanced state of the profession as a whole, and requiring the defendant's skill and diligence to be measured by that as a standard. What the standard of educated physicians was—the necessary qualifications of an educated physician—the court did not attempt to point out or define, and what standard the jury may have fixed upon, under such instructions, we have no means of knowing. Besides there was no evidence tending to show that the treatment by defendants was not even according to the standard of educated physicians. In the present aspect of the case, however, it would seem unnecessary to discuss at length this or any of the other questions arising in the case.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.