## WIEL *v.* WRIGHT.

*(Supreme Court, General Term, Fourth Department. February, 1890.)*

1. NEGLIGENCE—EVIDENCE—ACCIDENT ON HIGHWAY.

In an action for personal injuries, plaintiff testified that on the evening of the accident there was about a foot of snow on the ground; that there was light enough for a person of ordinary sight to see a horse 30 or 40 rods away; that he and his daughter were walking in the left-hand cutter track, near the embankment, on the left side of the road; that there were no sidewalks or beaten tracks, except where they were traveling; and that when he first saw defendant's horse it was right upon him. The daughter corroborated her father's testimony. Defendant and his companion gave evidence tending to show that plaintiff jumped in front of the horse, and that the accident was caused by the horse treading on a hand-sled which plaintiff was dragging by a rope seven or eight feet long. *Held*, that the questions of negligence and contributory negligence were properly left to the jury.

2. HIGHWAYS—LAW OF ROAD—DUTY TO LOOK FOR TEAMS.

　　A person walking on a highway, not being bound to look back or listen for the coming of another, so as to make clear the way before him, a charge that, if plaintiff failed to look "in all directions," he could not recover, was properly refused.

　　Appeal from Onondaga county court.

　　Action by Christian Wiel against Edward C. Wright for alleged negligence. Verdict for the plaintiff for $137, and an order made denying the motion for a new trial made upon the minutes in that court. The case was before this court on a former appeal, and was disposed of upon the ground that there had been an erroneous ruling at the trial. See report of the case in 45 Hun, 307. On the 7th of March, 1885, the plaintiff, after closing his day's work as a tailor, left the central portion of the city, in company with his daughter 12 years old, having with him a hand-sled and a sack of flour and groceries, started home by way of Onondaga street and Lincoln avenue. There was about a foot of snow on the ground, and good sleighing, and, although the moon was not shining, it was light enough for a person of ordinary sight to see a horse and cutter 30 or 40 rods. Plaintiff, in describing the accident, testifies: "We walked in the left-hand cutter track, and then the horse comes, and knocks me down, and left me there, between Bradley and Geddes street. I was pretty near to the embankment on the left-hand side of the road. There were tracks for one sleigh. When I first saw the horse and cutter, it was right on to me. I was struck on the left face. I don't know what happened then. I was insensible. * * * I was sick six weeks; confined to the house. * * * It was nine o'clock or later when I was run over. There were no sidewalks or beaten paths, except where I was traveling. I was traveling in the left track, where the cutters and sleighs go. Back of me, to the east, the ground was not so very level, nor so very rough. At the right-hand side, as you were going toward Geddes street, there was room for about half a dozen sleighs to pass. At the left there was not much room in the road, unless you took the lane. I was traveling in the left track. I was drawing a sled two foot or so behind me." The plaintiff's daughter was called as a witness, who to a considerable extent corroborated the version of the transaction given by her father. The defendant was sworn in his own behalf, and in the course of his testimony he says: "I sat on the right side of the cutter, and Mrs. Landon on the left. When we got nearly to the top of the hill, the horse started to trot. We came up the hill, and they were six or eight rods ahead of us. Then, when we got to the top of the hill, we came along. They were in the right-hand track, the girl twenty feet or so ahead of the man. The sleigh was drawn by the old gentleman by a rope seven or eight feet long over his shoulder, on the right side of his face. It was a small hand-sled. His sleigh was in the right track, behind the man. * * * When we got along about sixteen or eighteen feet, the girl stepped out to the right. She stepped from the right track. Turned her face towards us, and her back was towards the track. As I came up, the man got out of the track. Did not stir before I got to him. I tried to pass on the left side. Pulled the horse out. I saw it was more difficult to cross the ridge of the road to the right track of the horse, and out far enough to get around the girl. I thought that the left side was best, because there was nothing in the way. When I was twelve or fifteen feet from the man, I pulled the horse to the left, so that his fore feet were outside of the left-hand track,—to the left. If the man had remained where he was, by keeping the course I was going I should not have touched him, nor anything; but when the horse's head got within two or three feet of the man he trod to the left, sideways. His back was towards me. He trod sideways, with the rope upon his back, and seemed to fall forward right out of the track, towards the left. It seemed as if he was a little further than the track. As he jumped sideways, the sled was thrown almost across the right track. Then the horse turned to the right, and commenced to jump, and it

was with great difficulty that I could restrain the horse. Then I went between the man and the girl. The cutter struck something. I think it was the sleigh, because we tipped to the left, and nearly went over; and in about a second or so we tipped to the right, and nearly went over to the right. He was in the right track at first, when he jumped along there, and he run then to the corner, fifteen rods, as hard as he could run. * * * Didn't know I had run over a man. First learned it some time afterwards. I know he had jumped in front of the horse, and went down. I didn't know that I had touched him. I knew I had run over something. I didn't turn around and go back, because it was difficult to stop." Mrs. Lizzie Landon was called in behalf of the defendant, and to a considerable extent corroborated him in her narration of the circumstances attending the accident, and she says: "The horse jumped, and we went over the hand-sled. The horse jumped to the right, after the man jumped in front of him. Then we went over the hand-sled. We came near capsizing. I think the right runner of the cutter must have gone over the sled. The horse jumped and run. * * * I can't state which side of the girl the horse passed after striking the sled." Defendant appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*George C. Cowles*, for appellant. *T. E. Hancock*, for respondent.

HARDIN, P. J. 1. Upon the conflicting evidence appearing at the trial, it was proper that the principal questions involved therein should be submitted to the jury. Whether the plaintiff was guilty of contributory negligence was a question of fact for the jury. So, too, whether the defendant was guilty of negligence was a question, upon the whole evidence, for the jury to determine. It appears in *Adolph* v. *Railroad Co.*, 65 N. Y. 554, that an accident occurred whereby the plaintiff was brought in collision with a car. "Plaintiff did not hear the car until it was close up, and did not hear the driver call. Another witness testified he was close to the place of collision, and did not hear the driver call to plaintiff. Plaintiff, when he ascertained the car was behind him, turned off short, but before the wagon was clear of the track it was struck by the car, and upset, injuring plaintiff, and breaking his wagon." In that case it was held "that the evidence required the submission of the question of negligence on the part of defendant, and contributory negligence on the part of the plaintiff, to the jury." In *Parsons* v. *Railroad Co.*, 113 N. Y. 355, 21 N. E. Rep. 145, it is held that questions relating to plaintiff's contributory negligence must be made very clear before a court is warranted in withholding an inquiry in respect to them from the jury; and it is a familiar rule that when the evidence is conflicting, and different interpretations or inferences may be drawn therefrom, it is the province of a jury to pass upon the questions involved therein. *Belton* v. *Baxter*, 58 N. Y. 411; *Greany* v. *Railroad Co.*, 101 N. Y. 419, 5 N. E. Rep. 425; *Gillespie* v. *City of Newburgh*, 54 N. Y. 468. We are not at liberty to reverse the verdict of the jury, even though our impressions, if the question was an original one, might be in favor of the plaintiff. In *Baird* v. *Mayor, etc.*, 96 N. Y. 567, it was said: "In reviewing the determination of a trial court on questions of fact, [when the evidence is conflicting,] an appellate tribunal is not warranted in reversing, upon the sole ground that, in its opinion, the trial court should have reached a different conclusion. * * * To justify a reversal, it must appear that * * * the proofs so clearly preponderated in favor of a contrary result that it can be said, with a reasonable degree of certainty, that the trial court erred in its conclusions." Where parties to an action in giving their testimony are in conflict, it is the province of the jury to say which version is accurate and worthy of credence; and a finding of a jury which believes one party, and disbelieves the other, cannot be disturbed by an appellate court because of such finding of a jury. *Elwood* v. *Telegraph Co.*, 45 N. Y. 549;

*Carbon Works* v. *Schad*, 38 Hun, 71. From the views already stated, it is quite apparent that no error was committed by the trial court in refusing the motion for a nonsuit, when it was made at the close of the plaintiff's evidence.

2. It is contended by the learned counsel for the appellant that it was held in *Hartfield* v. *Roper*, 21 Wend. 615, where a collision on the highway has taken place, that the party injured cannot recover if he "had drawn the mischief upon him by his own neglect," and that under the doctrine of that case the charge of the trial court was erroneous. We have looked into the charge, and find that in the body of the charge it was stated to the jury that, "if the plaintiff himself has been guilty of negligence which contributed to the causing of the accident, then he cannot recover; because the law very wisely says that where two are to blame, and the one who suffers has himself been negligent, he must bear it, because the law is not wise enough, jurors are not wise enough, and courts are not wise enough to divide the damages, and say how much each one shall suffer; so that, after deciding what are the facts in this case, you will perhaps first attempt to determine, and will determine, whether or not, under all the circumstances, the defendant himself was negligent, and whether, if negligent, his negligence caused the accident. If you say that he took all the pains he could or ought to, as a prudent man and a reasonable man, to avoid this accident, then that is the end of this case, and the plaintiff should not recover. If you say he (the defendant) was negligent, and failed to perform his duty, and that his negligence caused the accident, then you will hold your judgment in suspense until you determine another question, namely, whether or not the plaintiff himself was guilty of negligence which contributed to the accident and injury for which he claims damages; and if you find he was guilty of such negligence, which contributed to the accident, then he cannot recover; but if you determine and decide that the defendant was guilty of negligence which caused the accident, and that the plaintiff was not guilty of negligence which contributed to it, then the plaintiff should recover damages."

We think the quotation from the charge which we have made contained nothing contrary to the principle laid down in *Hartfield* v. *Roper*, *supra*. When the body of the charge had been delivered, numerous requests to charge were presented by the appellant, and among them was one, to-wit: "That it was the duty of plaintiff, in walking in the traveled path of Lincoln avenue upon the occasion in question, to look for the approaching teams and vehicles in all directions from which ordinary, careful, and cautious men would expect them to come, and to use such care and vigilance to avoid injury from them as was proportionate to the danger to be encountered; and if he omitted so to do, and such failure contributed to the accident, plaintiff cannot recover." That request was declined, and the defendant took an exception. We think the words, "to look for approaching teams and vehicles, in all directions," were too broad, and properly refused, for two reasons—*First*, the subject-matter embraced in the request had been delivered to the jury in the charge as pronounced, and it was not error for the court to refuse to repeat an instruction upon the law already given; *secondly*, it was not the duty of the plaintiff, under the circumstances disclosed in this case, to look back and ascertain the approach of vehicles from the rear. *Coulter* v. *Express Co.*, 56 N. Y. 587. In *Adolph* v. *Railroad Co.*, 76 N. Y. 533, it was said by FOLGER, J.: "Each individual of the entire public, as a general rule, and in the absence of especial regulation of law, has as good right to be upon the common street or highway as any other individual thereof. * * * Hence he is not bound to look back, or to listen for the coming of another, so as to make clear the way before him."

Under the doctrine of these cases, we think the court properly refused to charge that it was the duty of the plaintiff "to look in all directions,"

"whether before or behind;" and that if "from such omission he failed to discover and avoid defendant's horse and cutter, then he cannot recover." The court did charge, in response to a request thereafter made by the appellant, "that if the plaintiff, upon the occasion in question, by the exercise of care and prudence proportionate to the danger ordinary men would apprehend in such a time and place, could have discovered the approach of defendant's horse and cutter, and stepped aside and escaped injury, then he cannot recover;" and he also charged "that if the plaintiff, upon the occasion in question, by being as careful as men ordinarily are, could have stepped out of the track in which he was walking, and escaped injury from defendant's horse and cutter, then he cannot recover." Our attention is invited to *Coleman* v. *Railroad Co.*, 114 N. Y. 613, 21 N. E. Rep. 1064, to a refusal to charge which was held to be erroneous. In dealing with that request, it was said that the matter embraced in the request which as a matter of law would have constituted a ground of negligence, "was not, in substance or effect, expressed in the instruction given by the charge of the court to the jury." We think that case does not aid the appellant. We are of the opinion that the appellant obtained from the court as favorable instructions as upon the case made he was entitled to receive, and that the principal questions of fact were properly left for the consideration of the jury, and that their verdict should be allowed to stand. Judgment and order affirmed, with costs. All concur.