PEARCE *v.* RODELL.

1. AUTOMOBILES — PEDESTRIANS — TESTIMONY AS TO TRACKS SEEN MORNING AFTER ACCIDENT.

In pedestrian's action against motorist for injuries received at about 7:30 p. m. on October 13th, where testimony was in direct conflict as to whether plaintiff and companion were on the pavement or berm, admission of testimony of nearby resident as to location of automobile tracks as he observed them the next morning and showing that foot tracks were next to the ditch where automobile's tracks were deepest *held,* proper.

2. EVIDENCE—PHOTOGRAPHS.

Admission of photographs taken some time after accident at the location thereof and showing plaintiff *held,* not error for purpose of showing general relative location of things at time pedestrian was injured.

3. SAME—EXPERT WITNESSES—PROVINCE OF JURY.

While the answer of a properly qualified expert witness as to what might cause a given result, the ultimate fact to be proved, would not be inadmissible, his answer as to what did cause it would be erroneous as an invasion of the province of the jury.

4. SAME—PHYSICIANS—CAUSE OF PAIN—PERMANENCY OF INJURY.

Physician's testimony in pedestrian's action against motorist that pain, as to which plaintiff testified, was caused by adhesions which tended to limit function of limb, that is, fibrous unions between two tissues brought about as the result of inflammation, and that he would say such condition of the muscles and bones would be permanent and that the pain would continue *held,* not inadmissible as invading province of the jury where witness testified his answer was based upon his actual observations of the tendons, condition of the legs, knowledge and history of the patient.

5. SAME—PHYSICIANS—CAUSE OF PAIN.

Testimony of physician who took X-rays of plaintiff's legs that his pain was due to atrophy of muscles, to shortening of both legs, to the angulation of the fragments and that change in the weight-bearing line existed because of the bowing and angulation of the lower left leg *held*, not inadmissible as an invasion of the province of the jury.

6. SAME—EXPERT TESTIMONY—TEST OF ADMISSIBILITY.

The test of the admissibility of testimony of experts is not whether the subject-matter is common or uncommon or whether many or few persons have knowledge of the matter but whether persons offered as experts have any peculiar knowledge or experience not common to the world, which renders their opinions founded on such knowledge or experience any aid to court or jury in determining questions at issue.

7. SAME — PHYSICIANS — EXTENT, PERMANENCY OF, AND RECOVERY FROM, INJURIES.

A physician may testify as to the extent of certain injuries, whether the injury is permanent or not, the probability of recovery, or the probable results of the injury.

8. SAME—MEDICAL OPINION—SCOPE.

The opinion of a medical man is admissible upon the condition of the human system, upon the probability of recovery from an injury, upon the question as to whether or not physical injuries are, or are not, of a permanent character and upon other questions peculiarly within his knowledge as such.

9. AUTOMOBILES—SPEED—ASSURED CLEAR DISTANCE AHEAD.

A motorist has no right to drive his automobile on the public highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead and it is *prima facie* unlawful for him to exceed such limitation of speed (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933).

10. SAME—LIGHTS.

A motorist is required to have his automobile equipped with headlights that would at all times, under normal atmospheric conditions, on a level road, produce a light sufficient to render clearly discernible a person 200 feet ahead (1 Comp. Laws 1929, § 4736, as amended by Act No. 64, Pub. Acts 1931, § 4738, as amended by Act No. 59, Pub. Acts 1931).

11. SAME—NEGLIGENCE—SPEED—LIGHTS—STOPPING.

Motorist whose car struck pedestrian *held*, guilty of negligence as a matter of law where he was driving car at such a speed as not to have it under sufficient control to bring it to a stop within the assured clear distance ahead even though his vision was obscured by glaring lights of an approaching automobile as it was then his duty to slacken his speed and have car under such control that he might stop it immediately if necessary (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933).

12. SAME—PEDESTRIANS—CARE REQUIRED OF MOTORISTS.

A pedestrian may walk on any part of a public highway and motorists must use reasonable and ordinary care not to run down pedestrians upon such highways.

13. SAME—PEDESTRIANS—PRESUMPTION THAT MOTORIST WILL USE DUE CARE.

A pedestrian has a right to rely upon the presumption that a motorist will exercise due care and is not, as a matter of law, required to look back for approaching vehicles.

14. SAME—PEDESTRIANS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether or not pedestrian who was walking along highway at 7:30 p. m. on October 13th was guilty of contributory negligence when hit by righthand fender and headlight of defendant's car which approached from rear *held*, a question for jury.

15. SAME—INSTRUCTIONS—PEDESTRIANS ON BERMS NOT GUILTY OF CONTRIBUTORY NEGLIGENCE.

Instruction that if jury found pedestrian was walking on the berm and not on the paved portion of the highway then he was exercising ordinary care and not guilty of contributory negligence *held*, proper.

16. SAME—REQUESTS TO CHARGE—CONTRIBUTORY NEGLIGENCE OF PEDESTRIAN.

Failure to give request to charge that if plaintiff pedestrian saw or could have seen defendant's car approaching from rear it was a circumstance to consider in determining whether plaintiff was guilty of contributory negligence *held*, not error where court fully charged jury as to matter of plaintiff's contributory negligence and charge as given was without error.

17. APPEAL AND ERROR—AMOUNT OF JURY'S VERDICT—CONSCIENCE OF COURT.

The amount of a verdict as fixed by a jury in an action for personal injuries ought not to be set aside unless it is such as to shock the conscience of the court.

18. DAMAGES — EARNING CAPACITY — FRACTURED BONES OF LEGS — PERMANENT INJURIES.

Verdict of $6,296.15 to 28-year old man who was receiving $65 a month and his board at time of injuries consisting of several comminuted fractures of leg bones and which required him to wear steel brace at time of trial, and which seriously angulated or bowed left leg, a condition that will in all probability prove permanent and disable him from doing work he had been doing *held*, not excessive.

Appeal from Berrien; Evans (Fremont), J. Submitted October 20, 1937. (Docket No. 136, Calendar No. 39,764.) Decided December 29, 1937.

Case by Robert Pearce against Victor Rodell for personal injuries sustained when he was struck by defendant's automobile. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*White & White*, for plaintiff.

*Gore, Harvey & Fisher (Harry C. Howard,* of counsel), for defendant.

POTTER, J. Plaintiff, claiming to have been injured by being struck by defendant's automobile negligently operated by him, brought suit and had verdict by a jury for $6,296.15. A motion for a new trial was made and denied and judgment entered on the verdict, with costs. Defendant appeals, claiming error in the introduction of testimony, the introduction of photographs made after the accident, the introduction of expert testimony, charging

the jury, overruling the motion of defendant for a new trial, and in not reducing the damages awarded.

On the evening of October 13, 1935, at about 7:30 p. m., plaintiff and his companion, one Cooper, were walking along the righthand side of a road in Berrien county. Plaintiff claims he was not walking upon the pavement, but outside the pavement; while defendant claims plaintiff was walking on the pavement. Defendant and his companions came along in defendant's automobile talking together, without much concern about the traffic, speed or anything else. Defendant saw the headlights of an approaching automobile and claims he passed the approaching automobile and, just as he was meeting this automobile, his car struck plaintiff. Some of defendant's companions thought the automobile defendant met was pretty well by when plaintiff was struck.

Defendant testified he had passed an intersection where he slowed down, he was blinded by the lights of the oncoming automobile, and "just as I was right along broadside of him I noticed something in front of him, I put on the brakes, I didn't have time to honk the horn or speak; I knew I hit something and when I, after I hit him I went, not over 20 feet, and applied the brakes the moment I see I was going to hit something and stopped and went back and see I hit a man. * * * I had plenty of room on the pavement on my side of the road. My car was on my own side of the road as we were passing this other car. I was on the pavement. * * * I didn't see anybody in front of me before I hit him. I didn't know at the time of the impact what part of my car struck this object. I afterwards examined my car to find out in what manner or what way my car was damaged. I discovered the glass on the right

headlight was broken, the lamp was bent back and the upper right corner of the radiator was pushed back about two inches. * * * I afterwards discovered that Mr. Pearce here was the man I hit. * * * I backed off of the pavement so we wouldn't have so far to carry him. * * * I know the right wheels were on the shoulder or berm. I backed up about 20 feet so I was opposite of him. Then Charles and Mr. Cooper and I loaded him in the car. * * * I swung to the right as I met that other car,—just to my own side of the road. If there was any swinging I still stayed on my side of the road. We didn't swing in far enough to go off the pavement.''

Charles Ferguson, who was riding with defendant, said:

"There was a time before our car hit Pearce that I saw Pearce, approximately 10 feet I think that I saw him. * * * If I had been looking ahead, might have seen them 200 or 300 feet, but I wasn't looking. * * * The reason I didn't see them before was, as far as I am concerned, probably because I was talking and not particularly looking ahead, just happened to glance ahead and there they were. * * * According to my estimate it was practically a tie as far as setting the brakes and hitting the man is concerned. I wasn't conscious of the car slowing down any before he was hit. Whatever speed we were going it hit at about that speed. * * * Ten feet I think would absolutely cover the distance he was knocked.''

The testimony of the parties was in direct conflict as to whether plaintiff was on the paved portion of the highway when struck. Defendant insists plaintiff was on the pavement. Plaintiff and his companion testify they were not on the pavement, but were walking upon the berm. Dr. Hubbard, of Eau

Claire, was present when plaintiff was operated on and testified:

"I had some talk with Mr. Rodell about how this accident happened. He said they were coming down the Shanghai road and they didn't stop at the crossing, and the car was coming up, and they had to swerve out in order to miss that car, and that is when he caught these fellows. He said that was when he hit Robert."

Roy Laberty, a fruit farmer, living near Eau Claire, testified:

"I saw Mr. Rodell there that night, this young man. I talked to him just a little. He told me something about how the accident happened. He said he was coming in from the Shanghai road and he said another car was coming from the south, and in turning out to miss the other car he struck Robert. He claimed he didn't see him."

There is other testimony bearing upon the place where the accident occurred. Testimony was received, over defendant's objection, that the next morning Laberty went to the scene of the accident at the request of plaintiff who said he had lost some things and wanted Laberty to see if he could find them. Laberty testified he saw automobile tracks where they left the pavement, went toward the ditch on the righthand side, ran along the ditch parallel thereto and back onto the pavement, the tracks were deeper near the ditch, and, near the deepest part of the track, were foot tracks, near the bank, and that there were no other automobile tracks. Defendant attempted to claim the tracks were probably those where he backed up his automobile at the time plaintiff was loaded in after he was struck. But the track in question indicates it could not have been made in the manner defendant

claims, and the only question for consideration is whether the court was in error in receiving this testimony.

Defendant relies upon *Billingsley* v. *Gulick,* 252 Mich. 235. In that case, the accident happened between 11 and 12 o'clock at night, upon a much traveled road, and testimony was admitted as to finding certain articles of personal property the next morning. The court said it was error to receive the testimony of the finding and location of the articles without affirmative proof there had been no change of position after the accident. The court said:

"The accident caused other automobile drivers to stop and a crowd to gather. There was testimony of blood on the pavement about six feet from the edge, and that defendants' car was upon the pavement when it struck the deceased, and also testimony that after the car struck the deceased it left the pavement for a short distance.

"It is difficult, from this record, to say whether the deceased was struck while upon the gravel or while upon the pavement."

Under the testimony here, it was proper to show the location of these tracks.

In *People* v. *Ryczek,* 224 Mich. 106, exception was taken to offered testimony as to automobile tracks in the highway near the place of accident. The observations testified to were made 24 hours after the accident. It was said:

"The testimony showed that the cross road was a dirt road; that the tracks made by the automobile were still plain. That no other automobile tracks had been over that part of the road, but that there were some wagon tracks. This testimony showed that the left wheel of the automobile was in the foot path about 20 inches from the ditch. It also appeared that the broken cart lay where it was

wrecked. We think it fairly appears that there had been no such change in the *locus in quo* as to make the testimony inadmissible."

There was no error in receiving the testimony in relation to the tracks along the side of the road.

Photographs taken some time after the accident, at the location thereof, were introduced in evidence and received over defendant's objection that the pictures were taken with the plaintiff himself there. Exhibits 1 to 4 were photographs taken at the scene of the accident some time after it occurred. As to exhibit 1, the photographer testified "That picture is a correct representation of that scene from that point. I finished these photographs myself." As to exhibit 2, he testified "That correctly represents that scene. I finished this photograph." As to exhibit 3, he testified "That picture correctly represents the scene within the scope of my camera at that time." And as to exhibit 4, he testified "This photograph is a correct representation of the situation from that point." In addition to this testimony, the photographer testified to the location of his camera upon the taking of each of the photographs.

The trial court said: "The photographs will be received for the purpose of showing the general relative location of things at this point," and cautioned the jury as to the use of the photographs.

Counsel for plaintiff said:

"We do not claim for these photographs that the location of these two men or as they are located in the photographs is any proof whatever that they were at that place at the time of the accident. Our claim for it is that the jury may take the testimony of the witnesses themselves as fixing the location, and I wish you would instruct the jury upon that point."

Whereupon the trial court said:

"I accept the statement of Judge White as correct instructions of the court on that point."

"It is a constant practice to receive as evidence pictures and drawings of objects which cannot be brought into court, after these have been proved to be accurate representations of the subject. In like manner photographs are often admitted, when the proper preliminary proof as to their exactness and accuracy is offered. They are of the same character of evidence as diagrams and pictures drawn by hand; not necessarily carrying the same degree of probative force, but still of the same character; not in themselves evidence at all, but representing to the eye what the witness declares was the real appearance of the thing at the time he saw it. Diagrams, drawings, and photographs are resorted to only because the witness cannot with language as clearly convey to the minds of the court and jury the scene as the light printed it on the retina of his own eye at the time of which he is testifying." 3 Jones, Commentaries on Evidence (Horwitz Ed.) § 581.

It was not error to receive the photographs in evidence.

Two physicians, who examined plaintiff and took X-rays, testified, and defendant contends that in receiving their testimony the court violated the rule laid down in *DeHaan* v. *Winter,* 258 Mich. 293.

In *DeHaan* v. *Winter, supra,* 299, a physician was asked— "Assuming the facts to be true that I have stated in my hypothetical question, what is your opinion as to the cause, the proximate cause, of the bow in that leg?" Plaintiff had sued defendant for malpractice, claiming such malpractice resulted in a bow in his leg. This court said this invaded the province of the jury. As far as the expert could

go was to state that the alleged malpractice might have caused the bow in the leg. The ultimate issue of fact for determination by the jury was whether the malpractice of defendant caused the condition of plaintiff. And, in holding it was error to permit such question to be answered for the reasons above stated, this court cited *Dundas* v. *City of Lansing,* 75 Mich. 499 (5 L. R. A. 143, 13 Am. St. Rep. 457); *Tice* v. *Bay City,* 78 Mich. 209; *Jones* v. *Village of Portland,* 88 Mich. 598 (16 L. R. A. 437).

In *DeGroot* v. *Winter,* 261 Mich. 660, 671, it was said:

"The rule violated in this case was early announced by this court, repeatedly followed, supported by the weight of authority, has led to no injustice, and has kept medical experts from invading the province of the jury and should be maintained."

The court cited *Hitchcock* v. *Burgett,* 38 Mich. 501; *People* v. *Hare,* 57 Mich. 505; *Jones* v. *Village of Portland, supra; In re Harris' Estate,* 247 Mich. 690; *DeHaan* v. *Winter, supra.*

Probably as clear a statement of the rule, restated in *DeHaan* v. *Winter* and *DeGroot* v. *Winter,* is contained in *People* v. *Hare, supra,* where defendant was on trial for murder:

"Counsel for the people then asked the following question: 'From the appearance of the wound, what would you say it was caused by?' This and a subsequent question of the same import were objected to, upon the ground that the witness could not give an opinion upon the matter. The objection was overruled.

"We think the objection to this question was well taken, and clearly comes within the decisions of this Court heretofore made. The question calls for the

fact which was to be found by the jury. What might have caused it would have been proper, but what did cause it was the real question for the jury. *Wilson* v. *People,* 4 Park. Crim. R. (N. Y.) 619, 649; *Evans* v. *People,* 12 Mich. 27, 35; *Moore* v. *State,* 17 Ohio St. 521; *Hitchcock* v. *Burgett,* 38 Mich. 501, 506; *Van Deusen* v. *Newcomer,* 40 Mich. 90.''

The testimony offered in this case was not objectionable within the rule established by the authorities above cited. One of the questions asked of a physician was in relation to the pain which plaintiff testified he suffered. The physician was asked his opinion as to the cause of such pain and, against defendant's objection, gave his opinion that the pain was caused by adhesions which tended to limit the function of the limb, that is, fibrous unions between two tissues brought about as the result of inflammation. The physician was then asked whether, in his opinion, the conditions existing by reason of the adhesions were likely to be permanent. This was objected to as invading the province of the jury, but the physician answered ''With the nature of the injury as I saw it and the condition of the muscles and bones I would say it would be permanent.'' This answer was based upon what the physician testified were his actual observations of the tendons, condition of the legs, knowledge and history of the patient. Subsequently this physician was asked whether he had an opinion whether or not this pain would continue in the future with reasonable certainty and be permanent. This was objected to, and the objection was overruled and the witness permitted to answer. Dr. Lawrence Fisher was examined and testified to taking various X-rays. It appeared from plaintiff's testimony that after any sustained use of his leg he suffered pain in the region of these

fractures. The physician was asked if he had an opinion as to what that pain might be attributed to, and answered:

"To the atrophy of the muscles, to the shortening of both legs, to the angulation of the fragments and the change in the weight-bearing line."

He further testified that an impairment of the weight-bearing line existed by reason of the bowing and angulation of the lower left leg. This was objected to, but the witness was permitted to answer.

The testimony excluded in *DeHaan* v. *Winter, supra,* and *DeGroot* v. *Winter, supra,* and the cases relied upon in those opinions, was testimony as to the ultimate fact for the determination of the jury, and the testimony was held improper because it invaded the province of the jury. The testimony involved in this case does not come within that rule.

"The true test of the admissibility of such testimony is not whether the subject-matter is common or uncommon, or whether many persons or few have knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue." *Luttenton* v. *Railway Co.,* 209 Mich. 20; *Taylor* v. *Town of Monroe,* 43 Conn. 36, 44.

"A physician may testify as to the extent of certain injuries, whether the injury is permanent or not, the probability of recovery, or the probable results of the injury." Rogers, Expert Testimony (2d Ed.), p. 122.

The opinion of a medical man is admissible upon the condition of the human system, and upon the probability of recovery from an injury, or upon

other questions peculiarly within his knowledge as such. 1 Lawson, Expert and Opinion Evidence (2d Ed.), p. 123. So, it is said a physician is competent to give his opinion as to the probability of recovery, generally. *Brown* v. *Railroad Co.,* 18 Misc. 584 (42 N. Y. Supp. 700); *Griswold* v. *Railroad Co.,* 115 N. Y. 61 (21 N. E. 726, 12 Am. St. Rep. 775); *King* v. *Railroad Co.,* 75 Hun, 17 (26 N. Y. Supp. 973); *Block* v. *Railway Co.,* 89 Wis. 371 (61 N. W. 1101, 27 L. R. A. 365, 46 Am. St. Rep. 849); *Lehigh & H. R. R. Co.* v. *Marchant,* 28 C. C. A. 544 (84 Fed. 870). He may give his opinion that physical injuries are, or are not, of a permanent character. *Cass* v. *Railroad Co.,* 20 App. Div. 591 (47 N. Y. Supp. 356); *Coyne* v. *Railway Co.,* 62 Hun, 620 (16 N. Y. Supp. 686); *Louisville, N. A. & C. R. Co.* v. *Falvey,* 104 Ind. 409 (3 N. E. 389, 4 N. E. 908); *Erickson* v. *Barber Bros.,* 83 Iowa, 367 (49 N. W. 838).

In *Langworthy* v. *Green Township,* 88 Mich. 207, 213, the attending physician was asked his opinion as to what effect the injury would have upon plaintiff as he grew older, and whether or not the "natural tendency of such a fracture would be to increase his disability as he gets older." The witness was permitted to answer the questions, and error was assigned thereon. The court said:

"Plaintiff was entitled to show the probable effects of an injury of this character, and it could only be shown by the opinion of a competent physician."

In that case, it was said, p. 215:

"The rule is that, where the court or jury can make their own deductions, they shall not be made by those testifying; but where the witness gives fully and succinctly, as in this instance, the facts upon which he bases that conclusion, there is no presumption of prejudice,"

In the case here, not only did the physicians testify very fully as to the facts upon which they based their conclusions, but they were entitled to give the opinion which they did give on the probable effects of the injury which plaintiff received. The probable effects of an injury such as that suffered by the plaintiff could be shown only by the opinion of a competent physician. Substantially the same rule was followed in *Miller* v. *Railroad Co.*, 167 Mich. 21. We find no error in the receipt of this testimony.

Appellant claims the court was in error in saying there was no imperative rule of law requiring a pedestrian to be looking or listening continuously for automobiles approaching from the rear, and in refusing to give the defendant's ninth request to charge bearing upon the plaintiff's contributory negligence. That request was as follows:

"If the plaintiff looked and the defendant's car was in the range of his vision, and you so find, it was then the plaintiff's duty to see the car and take precaution for his own safety accordingly.

"If you find the plaintiff was in a position where his range of vision, had he looked back, would take in the oncoming car, or should have taken in the oncoming car, that fact, if you find it to be a fact, is a circumstance you have to consider on the subject of plaintiff's contributory negligence, if any. For I instruct you that the law is that a man is in law bound to see what the facts in the case indicate could have been seen if he looked."

The defendant had no right to drive his automobile on the public highway at the place and at the time the injury to plaintiff occurred at a speed greater than would permit him to bring it to a stop within the assured clear distance ahead (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933 [Comp. Laws Supp. 1935, § 4697]) ; and it

was *prima facie* unlawful for him to exceed that limitation in speed (1 Comp. Laws 1929, § 4697, as amended by Act No. 119, Pub. Acts 1933 [Comp. Laws Supp. 1935, § 4697]). Defendant was required by statute to have his automobile equipped with headlights (1 Comp. Laws 1929, § 4736, as amended by Act No. 64, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 4736]) that would at all times, under normal atmospheric conditions, on a level road, produce a light sufficient to render clearly discernible a person 200 feet ahead (1 Comp. Laws 1929, § 4738, as amended by Act No. 59, Pub. Acts 1931 [Comp. Laws Supp. 1935, § 4738]). It is clear if he was driving his automobile at a rate of speed so he could not bring it to a stop within the assured clear distance ahead, he was guilty of negligence as a matter of law. If defendant's vision was obscured by the glaring lights of the approaching automobile, it was his duty to slacken his speed and have his car under such control that he might stop it immediately if necessary. *Budnick* v. *Peterson,* 215 Mich. 678. We do not understand the question of defendant's negligence is disputed.

Defendant contends plaintiff was guilty of contributory negligence. Plaintiff was injured either while walking on the berm of the road where he had a right to walk, or he was injured while walking on the right side of the pavement as the defendant claims.

There is no statute which says a person shall walk on any particular portion of a public highway which is open for the use of all the people without distinction for passage and repassage at their pleasure. A pedestrian may walk on any part of a public highway, and persons operating automobiles must use reasonable and ordinary care not to run down pedestrians upon such highways. A pedestrian has a

right to rely upon the presumption the driver of an automobile will exercise due care and is not, as a matter of law, required to look back for approaching vehicles. *Wiel* v. *Wright,* 55 Hun, 611 (8 N. Y. Supp. 776); *Adolph* v. *Railroad Co.,* 76 N. Y. 530; *Church* v. *Spicer,* 85 Conn. 579 (83 Atl. 1115); *Stringer* v. *Frost,* 116 Ind. 477 (19 N. E. 331, 2 L. R. A. 614, 9 Am. St. Rep. 875); *Shapleigh* v. *Wyman,* 134 Mass. 118; *Williams* v. *Grealy,* 112 Mass. 79; *Moebus* v. *Herrmann,* 108 N. Y. 349 (15 N. E. 415, 2 Am. St. Rep. 440); *Raymond* v. *Hill,* 168 Cal. 473 (143 Pac. 743); *Petrie* v. *E. A. Myers Co.,* 269 Pa. 134 (112 Atl. 240); *Hennessey* v. *Taylor,* 189 Mass. 583 (76 N. E. 224, 3 L. R. A. [N. S.] 345, 4 Ann. Cas. 396); *People* v. *Blandford,* 23 Porto Rico, 580; *Graham* v. *Evening Press Co.,* 135 Mich. 298; *Tio* v. *Molter,* 262 Mich. 655.

In *Adolph* v. *Railroad Co., supra,* 533, it was said:

"Each individual of the entire public, as a general rule and in the absence of especial regulation by law, has as good right to be upon the common street or highway as any other individual thereof.   *   *   * Hence, he is not bound to look back, or to listen for the coming of another, so as to make clear the way before him."

In *Petrie* v. *E. A. Myers Co., supra,* it was said:

"It seems to us that, as decedent was lawfully upon the highway, using the extreme right-hand paved roadway, he could safely assume, as his rights were equal with those of the users of motor or horse-driven vehicles, that he would not be struck from the rear by any such vehicles."

In *Church* v. *Spicer, supra,* a charge by the trial court that—"one is not obliged, as a matter of law, under ordinary circumstances, to look back and see whether he is in danger of being run into by teams

going in the same direction that he is traveling; but it is for you to consider whether, as a matter of fact, under the circumstances of this case, a man in his senses ought not to look back and see whether he is about to be run into by a team traveling in the same direction on the highway. This is not a question of law; it is a question of fact for you to decide," was approved.

In *Korstange* v. *Kroeze,* 261 Mich. 298, it was held plaintiff had a right to walk on any part of the pavement, exercising, however, the care of a reasonably prudent man for his own protection and preservation.

In *Warwick* v. *Blackney,* 272 Mich. 231, it was held that pedestrians have a right to assume the driver of an automobile will use ordinary care for their protection; but they must, at the same time, use reasonable care for their own safety.

In *Graham* v. *Evening Press Co., supra,* 303, it was said:

"We are cited to no case, and know of none, which casts upon a pedestrian traveling the street the duty of keeping a constant lookout to the rear as matter of law. The question of what constitutes due care in such a case is for the jury."

In *Tio* v. *Molter, supra,* 661, it was said:

"If struck by an auto coming behind him, his negligence presents a jury question."

Even though plaintiff was walking upon the right-hand side of the pavement, as plaintiff claims, so that he was struck by the righthand fender and headlight of defendant's automobile, still it was a question for the jury whether or not plaintiff was guilty of contributory negligence. The trial court charged the jury:

"Pedestrians upon the public highway have a right to assume in the first instance the driver of an automobile will use ordinary care and caution for the protection of pedestrians, nevertheless the pedestrian must not rest content on such assumption, if there comes a time where he knows, or ought to know by the exercise of reasonable care, he is being placed in danger. He must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances."

The court very fully charged the jury in relation to the contributory negligence of the plaintiff, and we find no error in the charge. The trial court further charged the jury that if they found plaintiff at the time of his injury was walking upon the berm, and not upon the paved portion of the highway, then he was in the exercise of ordinary care and caution and was not guilty of contributory negligence. This part of the charge was proper. *Budnick* v. *Peterson, supra.*

The trial court did not err in refusing to grant a new trial.

This brings us to the question of whether or not the verdict in the case was excessive. Plaintiff was 28 years of age at the time of the trial, weighed 220 pounds, was used to hard work, made from $3 to $3.50 a day, was frugal and saved money, had never been sick, and at the time of his injury he was receiving $65 a month and his board. At the time of the injury, plaintiff was thrown a considerable distance and landed on the bank alongside the ditch at the side of the highway. Both legs were broken and all the bones were sticking through the sides of each leg. He sustained comminuted fractures of both bones of both lower legs. There was quite a patch of bone lost from the left leg. He was given an anæsthetic and a plate was put in. One of the pieces

of bone was hanging on the outside at the time he was picked up, and they did not find the other piece of the bone. He was wearing a steel brace at the time of the trial. He contracted pneumonia in the hospital from the shock. His left leg is seriously angulated or bowed. His medical expenses and hospital bills totaled over $1,500. And there is testimony that in all probability his injuries will prove permanent and he will be disabled from carrying on the kind of work he was in the habit of doing, and of earning a living. The amount of the verdict in this kind of a case, fixed by a jury, ought not to be set aside unless it is such as to shock the conscience of the court. The amount of the verdict is, within the rules of law, a matter for the jury, and we think the jury was not in error in fixing the award of damages to plaintiff.

Judgment affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred.