ASHWORTH v. CITY OF DETROIT.

1. APPEAL AND ERROR—DIRECTED VERDICT—CONTRIBUTORY NEGLI-GENCE—EVIDENCE.

On plaintiff's appeal from directed verdict for defendant because of plaintiff's contributory negligence in operation of her car which collided with defendant's streetcar, the test applied is whether from the facts, viewed in their most favorable light, the minds of reasonable men can honestly reach different conclusions.

2. AUTOMOBILES—DUTY OF CARE REQUIRED OF MOTORIST.

A motorist has a duty of care commensurate with the conditions of travel.

3. APPEAL AND ERROR—DIRECTED VERDICT—NEGLIGENCE—EVIDENCE—ANTECEDENT CAUTION.

On appeal from directed verdict for defendant street railway operator in motorist's action for damages the Supreme Court applies an objective test and measures only the part of her conduct directly relating to the mishap in question and one step beneath the legal standard which contributes to the mishap means a denial of recovery, even though there was extreme antecedent caution.

4. STREET RAILWAYS—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—VISIBILITY—ATMOSPHERIC CONDITIONS.

Motorist who stopped her car at an intersection 42 feet from nearest rail of streetcar track at about 1:45 in the morning, early in April, at a time when the visibility was limited to

about 150 feet because of atmospheric conditions, drew nearer 7 or 8 feet and again stopped but saw no streetcar approach, *held*, guilty of contributory negligence as a matter of law in failing to make further observation while proceeding at speed of 7 or 8 miles an hour across streetcar track upon which defendant's streetcar was proceeding at 25 to 30 miles an hour and which instantly killed her husband and inflicted serious injuries to plaintiff.

5. Automobiles—Intersections—Duty of Observation. ·
    Circumstances may require more than one satisfying look by a motorist before entering an intersection to fulfill the duty of observation, especially where visibility is impaired.

6. Negligence—Imputed Negligence.
    Motorist who drove car in which her husband was riding at time of accident may not recover damages for his death as administratrix of his estate where she was guilty of contributory negligence as a matter of law since her negligence was imputed to him.

Bushnell, C. J., and Potter and McAllister, JJ., dissenting.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 16, 1940. (Docket Nos. 51, 52, Calendar Nos. 40,756, 40,757.) Decided June 3, 1940.

Separate actions in case by Marjorie Ashworth, individually and as administratrix of the estate of John F. Ashworth, deceased, against City of Detroit, a municipal corporation (Department of Street Railways), for damages for plaintiff's personal injuries and for damages for injuries causing death of plaintiff's decedent as the result of a collision between an automobile and a streetcar at a street intersection. Cases consolidated for trial and appeal. Directed verdicts and judgments for defendant. Plaintiff appeals. Affirmed.

*Crawford S. Reilley,* for plaintiff.

*Rodney Baxter* and *Leon H. Harman,* for defendant.

BUTZEL, J. Plaintiff brought suit in her own behalf and as administratrix of the estate of her deceased husband, John F. Ashworth, for damages arising out of a collision with one of defendant's streetcars. On April 3, 1937, plaintiff and her husband, residents of Monroe, Michigan, drove to Detroit to spend an evening with friends. They left their automobile at their friends' home and went by taxi to a night club for dinner. They returned some time after midnight to get their automobile and to drive back to Monroe. It had been raining for the most part of the day and the weather was very cloudy and misty. Although the rain had stopped by this time, visibility was still very poor. Plaintiff's husband thought that the weather conditions made it unwise to attempt the drive to Monroe that night, and he suggested that they spend the night at a hotel, but plaintiff insisted upon making the trip. At about 1:45 on the morning of April 4, 1937, the unfortunate mishap occurred in the city of Detroit at the intersection of Trumbull avenue and Cherry street. Plaintiff testified that she was aware of the extremely difficult driving conditions, and that she made a complete stop at the five intersections of Cherry street and other streets east of Trumbull avenue. Cherry street is 26 feet from curb to curb at Trumbull, and the paved portion of Trumbull avenue is 54 feet wide. There are double streetcar tracks on Trumbull to provide for north and southbound streetcars. The first track plaintiff would cross as she proceeded west on Cherry street was 19½ feet from the east curb of Trumbull avenue. Plaintiff testified that her speed before nearing the intersection was about 15 miles per hour. She says that she made two complete stops before attempting to cross Trumbull avenue. The first was made about 42 feet east of the nearest rail of the tracks, but Mrs. Ashworth was not satisfied with the visibility at this point because of an obstructing fence,

so she drove ahead 7 or 8 feet and came to a complete stop again. Here the visibility extended about 150 feet down the tracks. She says she looked to the south, north and ahead, and, as there was nothing coming, she proceeded to cross the intersection at about 7 or 8 miles per hour. Just as she was about to cross the tracks she heard the noise of defendant's streetcar coming from the south; a turn to the north failed to take her out of its oncoming path. The streetcar struck the front of plaintiff's automobile on the driver's side. Mr. Ashworth was killed instantly and Mrs. Ashworth was seriously injured. There was proof tending to show that defendant's streetcar was being operated at a speed of 25 to 30 miles per hour at the time of the collision. At the close of plaintiff's proofs, the trial court instructed the jury that plaintiff was guilty of contributory negligence as a matter of law in not making a second observation before crossing the tracks because she knew her observation was limited by weather conditions and that an object 150 feet away might approach without notice before she could reach the tracks. He also ruled that plaintiff's negligence was imputed to her husband so as to bar recovery by plaintiff as administratrix. Since the oral argument of this case, plaintiff has withdrawn any claim of violation of city ordinance or of subsequent negligence, leaving only one question for our consideration.

The problem is whether plaintiff has shown freedom from contributory negligence. *Pomeroy* v. *Dykema*, 256 Mich. 100; *Block* v. *Peterson*, 284 Mich. 88. The test for our determination is whether from the facts viewed in their most favorable light (*Rogers* v. *Railroad Co.*, 289 Mich. 397) the minds of reasonable men can honestly reach different conclusions. *Detroit & Milwaukee R. Co.* v. *Van Steinburg*, 17 Mich. 99; *Thompson* v. *Michigan Cab Co.*, 279 Mich. 370. Plaintiff had a duty of care commensurate with

the conditions of travel and the other circumstances of the event in question. She tells us that she was aware of the weather conditions. It may be said that she exercised extreme care up to the time she drew near Trumbull avenue. We apply an objective test and measure only the part of her conduct directly relating to the mishap in question; in our examination of this phase, one step beneath the legal standard which contributes to the mishap means a denial of recovery, even though there was extreme antecedent caution. Plaintiff stopped her car about 42 feet back of the nearest rail; she was dissatisfied with the range of visibility because of the nearby fence and because of the limitations of the weather. She drew nearer about seven or eight feet; from this vantage point she was content that for 150 feet to the south there loomed no other vehicles that might mean destruction, and from this she concluded that further vigilance was not needed. The cloudy and misty atmosphere brought the horizon within a stone's throw. A vehicle just beyond her sight would, if traveling at 30 miles per hour, be upon her in less than three and one-half seconds; she had to travel more than 40 feet (including the length of her car) to get to the nearest point of safety beyond the path of vehicles coming in the same direction as defendant's streetcar. At the continuous rate of eight miles per hour she would have traveled slightly over 41 feet, and this is without any allowance for the time needed for acceleration, an inevitable process which consumes time that might mean the saving of life. Under the circumstances, where outlook was limited, as plaintiff here says, to the narrow range of 150 feet, and she proceeded at a very low rate of speed, her failure to get the warning of danger or the assurance of safety that a second glance would afford constituted such a disregard for her own protection as to justify the action of the trial court in

directing a verdict against her. Circumstances may require more than one satisfying look before entering an intersection to fulfill the duty of observation. *Thomas* v. *Railroad Co.*, 267 Mich. 396; *Young* v. *Martinich*, 279 Mich. 267; *Wells* v. *Oliver*, 283 Mich. 168; *Block* v. *Peterson, supra; Carey* v. *DeRose*, 286 Mich. 321; *Ehrke* v. *Danek*, 288 Mich. 498. "Visibility at an intersection is a factor," it is said, "and more care is required under some circumstances than others." *Rathburn* v. *Riedel*, 291 Mich. 652. Plaintiff relies on *Reichle* v. *Railway*, 203 Mich. 276, where it was held that the question of self-protection was for the jury. In that case, at a distance of 20 or 25 feet from the nearest rail plaintiff made an initial observation that the path he was to cross was clear for 250 feet, but he also looked again when his car was 4 or 5 feet from the nearest rail. From the observations thus made, it could not be the unanimous conclusion of reasonable minds that faulty conduct on plaintiff's own part contributed to the misfortune and it was held that the determination under such circumstances must be with the triers of the facts. In the case before us, plaintiff, with a single view, put aside as a finished task her duty of vigilance. Thus she admits her failure to maintain a proper outlook under conditions when the scope of vision could at no time give a promise of safety that would endure until the zone of danger was passed. The trial court correctly held that her conduct constituted contributory negligence. Under the rule of imputed negligence, plaintiff may not recover as administratrix. *Carey* v. *DeRose, supra.*

The judgment is affirmed. Costs to defendant.

SHARPE, CHANDLER, NORTH, and WIEST, JJ., concurred with BUTZEL, J.

McALLISTER, J. (*dissenting*). I am of the opinion that the question of plaintiff's contributory negli-

gence was for the jury. The paved portion of Trumbull avenue is 54 feet wide. Plaintiff stopped and made her observation when she was about 34 feet from the nearest rail of the streetcar track. This rail was approximately 20 feet from the curb. Plaintiff was, therefore, almost to the crosswalk when she made her observation. Her range of vision was limited to 150 feet because of mist. How many observations to the south was it necessary for her to make before driving across the street? It would seem to be unnecessary to emphasize that plaintiff was obliged to make observation other than in the direction from which the streetcar came. She had to look not only to the south, but to the north and ahead to the west. She was also obliged to be mindful of pedestrians at the intersection. In *Adams* v. *Canfield*, 263 Mich. 666, plaintiff's driver stopped five feet from the pavement of a through highway in the country. He looked to the right and to the left and saw no car approaching. *His range of vision was limited to a space of 180 feet* because of a snowstorm. He started to cross the highway, and, when he had attained the speed of from 4 to 6 miles an hour, was struck by defendant coming from plaintiff's right. The trial court held that plaintiff's driver was guilty of contributory negligence as a matter of law, because he failed to make more than one observation to his right before crossing. This court reversed the judgment on the ground that the question of the contributory negligence of plaintiff's driver was a question of fact for the jury.

Under the above authority the judgment should be reversed and a new trial awarded, with costs to plaintiff.

BUSHNELL, C. J., and POTTER, J., concurred with McALLISTER, J.