*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES MURPHY,

        Plaintiff-Appellant,

and

SPINE SPECIALISTS OF MICHIGAN PC,

        Intervening Plaintiff,

v

HANOVER INSURANCE COMPANY and AUTO
CLUB GROUP INSURANCE ASSOCIATION also
known as AAA INSURANCE COMPANY,

        Defendants,

and

APRIL MYERS and SEAN BARRETT ,

        Defendants-Appellees.

UNPUBLISHED
December 7, 2023

No. 364223
Wayne Circuit Court
LC No. 21-002338-NI

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

In this negligence action, plaintiff, James Murphy, appeals by right the trial court order granting summary disposition in favor of defendants, April Myers and Sean Barrett,[1] under MCR 2.116(C)(10). Considering the evidence in the light most favorable to Murphy, we conclude that there are genuine issues of material fact whether Myers negligently operated Barrett's vehicle, and whether Murphy was more than 50% at fault for the accident. We reverse and remand.

---

[1] Defendants Myers and Barrett will be referred to as defendants when discussed jointly, or by their proper names, as appropriate, for purposes of identification when the facts dictate.

## I. BACKGROUND

This case arises out of a traffic accident that occurred on Fort Street and Goddard Road in Lincoln Park at approximately 5:15 p.m. on August 8, 2019. Fort Street is eight lanes wide at Goddard Road, with four lanes of travel in each direction that are separated by a grassy median. Murphy was struck by a Lincoln MKC owned by Barrett and driven by Myers while Murphy was crossing Fort Street in the marked crosswalk in his motorized wheelchair. As a result of the accident, Murphy sustained serious physical injuries.

Murphy testified in his deposition that, on the date of the accident, he socialized with his neighbors and drank two cocktails. At approximately 4:00 p.m., he rode his motorized wheelchair to the store. On his way home, he entered the crosswalk to cross Fort Street, heading west. When he entered the crosswalk, northbound Fort Street vehicle traffic was stopped at a red light. There were seven or eight vehicles stopped in each of the first three lanes of traffic. Murphy testified that the pedestrian control signal displayed 12 seconds, in white, on the countdown timer as he entered the crosswalk. To the best of his recollection, there were eight seconds displayed in white on the countdown timer after he crossed the first two lanes of traffic and was approaching the third lane. There were no vehicles stopped in the fourth lane.

The first car in the third lane of northbound traffic was a Ford F-150 operated by Brandon Taylor. Taylor confirmed in his deposition that there were vehicles stopped in each of the three lanes of traffic. He estimated that there were at least five to six cars stopped in each of the lanes. Taylor observed Murphy enter the crosswalk in his motorized wheelchair to the east of Taylor's vehicle. Taylor said it was "very easy" for him to see Murphy as he crossed Fort Street. Taylor testified that Murphy was "good to cross" when he started crossing Fort Street, but the pedestrian signal "did start flashing" as Murphy was in front of the vehicle in the second lane. When asked whether the signal was flashing "don't walk" or if it was flashing red, Taylor reiterated several times that it was simply "flashing." As Murphy crossed in front of Taylor's F-150, the light for northbound Fort Street traffic turned green. Taylor remained stopped to allow Murphy to continue to cross the street. Taylor looked in his left mirror and observed a vehicle approaching the intersection. The Lincoln slowed as it approached the intersection, approximately one car length behind Taylor's F-150, but then the vehicle accelerated and proceeded through the intersection when the light turned green and struck Murphy.

Emergency personnel responded to the accident scene. The investigating police officer observed damage to the front passenger side of the Lincoln. The officer spoke with Myers, her passenger, and Taylor, but he did not speak with Murphy. Ultimately, the officer found Murphy at fault for the accident. Murphy was conveyed to the hospital via ambulance. The hospital records reflect that his blood alcohol content was 0.246.

Relevant to this appeal, Murphy filed a second amended complaint alleging negligence against Myers and owner's liability against Barrett. Defendants sought summary disposition under 2.116(C)(10), contending Myers was not negligent and that Murphy was more than 50% at fault and thus barred from recovery under MCL 500.3135(2)(b). Defendants pointed to Murphy entering the crosswalk on a flashing signal, which impeded, blocked or otherwise interfered with the normal flow of traffic. In response, Murphy maintained that there was a genuine issue of material fact regarding fault and allocation of fault is a question for a jury to decide.

The trial court adopted and incorporated defendants' arguments and granted defendants summary disposition under MCR 2.116(C)(10). The court concluded that there was no genuine issue of material fact that Myers operated the Lincoln in a nonnegligent manner and Murphy's own negligence was the cause of the accident. Because the court determined that Murphy's negligence made him more than 50% at fault for the accident, the court found Murphy was precluded from recovering damages under MCL 500.3135(2)(b). Murphy moved for reconsideration, which the trial court denied. This appeal followed.

## II. ANALYSIS

Murphy argues the trial court erred by granting summary disposition in favor of defendants because there is a genuine issue of material fact whether Myers negligently operated the Lincoln. We agree.

## A. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a trial court must consider the evidence submitted by the parties in the light most favorable to the non-moving party and may only grant the motion if there is no genuine issue of material fact. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). But "[t]he court is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

## B. MYERS'S NEGLIGENCE

To succeed on a negligence claim, a plaintiff must demonstrate that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v Sears, Roebuck and Co,* 492 Mich 651, 660; 822 NW2d 190 (cleaned up). It is well established that Michigan drivers have many statutory and common law duties:

> Many duties are imposed upon the drivers of motor vehicles upon public streets and highways. Some result from express statutory requirements to observe certain speed limits, to stop for certain traffic signals and signs, or, under certain circumstances, to yield the right-of-way, violations of which constitute negligence per se. Other duties are inherent in the exercise of that due care which connotes freedom from negligence as defined by the courts. Among the latter are the duties to maintain a reasonable and proper lookout, to see what is plainly there to be seen and give it due heed, and, before proceeding, from a suitable observation of conditions then and there existing, to form a reasonable belief that it is safe to proceed. [*City of Kalamazoo v Priest*, 331 Mich 43, 47; 49 NW2d 52 (1951) (citation omitted).]

-3-

A person must exercise reasonable care and caution while driving a motor vehicle. *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). The duty to exercise reasonable care and caution requires a driver to recognize the conditions and circumstances of travel. *Ashworth v Detroit*, 293 Mich 397, 400–401; 292 NW 345 (1940). "[A] driver shall not operate his vehicle so fast that he cannot bring it to a complete stop within that distance ahead of him in which he can clearly perceive any object that might appear in his path." *Cole v Barber*, 353 Mich 427, 431; 91 NW2d 848 (1958); see also MCL 257.627(1) (stating that a person operating a vehicle should do so at a careful and prudent speed that would allow the driver to stop within the assured, clear distance ahead). "[A]utomobile drivers must notice persons in the street, must use reasonable and ordinary care not to run down pedestrians on the highway, [and] must obey statutes governing the use of automobiles[.]" *Birkhill v Todd*, 20 Mich App 356, 360, 174 NW2d 56 (1969).

Once duty is established, the fact-finder determines whether there was a breach of the duty and what constitutes reasonable care under the circumstances. *Meyers v Rieck*, 509 Mich. 460, 471, 983 NW2d 747(2022); see also *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992) ("Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury. The jury must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent." (Citation omitted.)). If a motorist fails to observe a pedestrian who can be seen coming into his or her path and fails to stop when he or she is capable of doing so, a question of fact exists regarding whether the driver was negligent. *Johnson v Hughes*, 362 Mich 74, 77-78; 106 NW2d 223 (1960).

Viewing the facts in the light most favorable to Murphy, we find that a reasonable juror could conclude that Murphy was visible in the crosswalk and that Myers could have avoided striking him or taken evasive action to at least minimize the damage. Taylor testified that it was "very easy" for him to see Murphy as he crossed Fort Street in the crosswalk. We recognize that Taylor speculated that his truck and other larger vehicles to Myers's right may have obstructed Myers's view. But Taylor's speculation is inadmissible and insufficient to establish that Myers' view was actually obstructed. Further, the fact that Myers's view may have been obstructed did not relieve her of her duty to properly view the road in front of her as conditions permitted. If her vision was obstructed, she had a "duty to slacken [her] speed and have [her] car under such control that [she] might stop it immediately if necessary." *Pearce v Rodell*, 283 Mich 19, 34; 276 NW 883 (1937); see also *Persail v Mosley*, 343 Mich 78, 80; 72 NW2d 241 (1955) ("A question of fact was presented as to where plaintiff had come from, whether [the defendant] could have seen him in time to avoid the accident, and whether his failure to do so constituted negligence which was a proximate cause of the accident.") "As a general rule, it can not be doubted that the question of negligence is a question of fact and not of law." *Detroit & Milwaukee R Co v Van Steinburg*, 17 Mich 99, 118 (1868). We conclude that genuine issues of material fact exist regarding whether Myers negligently struck Murphy while he was in the crosswalk to be seen. Accordingly, the trial court erred by granting summary disposition in favor of defendant on the grounds that there was no evidence of Myers's negligence.

C. MURPHY'S COMPARATIVE FAULT

The trial court further erred by finding that there is no genuine issue of material fact that Murphy was more than 50% at fault or the accident, barring him from recovery pursuant to MCL 500.3135(2)(b), which provides: "Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault."[2]

"The doctrine of comparative fault requires that every actor exercise reasonable care." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 33; 761 NW2d 151 (2008). "The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration." *Rodriquez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991). A pedestrian has a duty to exercise ordinary care, but he has the right to assume that a driver of a motor vehicle will not be negligent. *Pearce*, 283 Mich at 34-35. MCL 257.657 provides:

> Each person riding a . . .personal assistive mobility device . . . upon a roadway has all of the rights and is subject to all of the duties applicable to the driver of a vehicle under this chapter, except for special regulations in this article and except for the provisions of this chapter that by their nature do not apply.

In this case, defendants argued, and the trial court agreed, that Murphy violated MCL 257.613, which provides in pertinent part:

> (2) If special pedestrian control signals are installed, they shall be placed at the far end of each crosswalk and shall indicate a "walk" or "don't walk" interval. These special signals shall apply to pedestrians only to the exclusion of a regular traffic control signal or signals which may be present at the same location, as follows:

---

[2] On appeal, defendants also argue for the first time that they were also entitled to summary disposition under MCL 600.2955a(1), which provides in pertinent part:

> It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage.

Because defendants did not raise this argument before the trial court, we decline to consider it. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("Michigan generally follows the 'raise or waive' rule of appellate review.").

(a) Walk interval—Pedestrians facing the signal may proceed across the highway in the direction of the signal and shall be given the right of way by the drivers of all vehicles.

(b) Don't walk (steady burning or flashing) interval—A pedestrian shall not start to cross the highway in the direction of the signals, but a pedestrian who has partially completed crossing on the walk interval of the signal shall proceed to a sidewalk or safety island while the don't walk interval of the signal is showing.

And because the court found that Murphy violated MCL 257.613, it also found that he violated MCL 257.676b, which prohibits persons from "block[ing], obstruct[ing], imped[ing], or otherwise interfer[ing] with the normal flow of vehicular . . . or pedestrian traffic upon a public street or highway in this state . . . with his or her person."

Taylor testified that Murphy was "good to cross" when he started crossing Fort Street, but the pedestrian signal "did start flashing" as Murphy was in front of the vehicle in the second lane. When asked whether the signal was flashing "don't walk" or if it was flashing red, Taylor reiterated several times that it was simply "flashing." Murphy testified that the pedestrian signal displayed a white countdown with the numeral 12 when he entered the crosswalk, and after he had passed the first two lanes of traffic, the white countdown displayed the numeral 8. The Michigan Department of Transportation explains that "[c]ountdown pedestrian signals display the number of seconds before the *walk* signal changes." (Emphasis added).[3]

Viewing the facts in the light most favorable to Murphy, we find that a reasonable juror could conclude that Murphy did not violate MCL 257.613(2)(b) when he entered the crosswalk and, regardless of the "flashing" signal when he reached the second lane, the statute authorized him to "proceed to a sidewalk or safety island while the don't walk interval of the signal is showing." But a reasonable juror could also conclude that Murphy violated MCL 257.613(2)(b) when he entered the crosswalk, and violated MCL 257.676b when he remained in the crosswalk when the traffic signal turned green for northbound Fort Street vehicular traffic. And if the jury concludes that Murphy violated the statutes, the jury may infer negligence. See *Gould v Atwell*, 205 Mich App 154, 160; 17 NW2d 283 (1994). But even if the jury concludes that Murphy violated MCL 257.613(2)(b) and MCL 257.676b, "[i]t is for the jury to determine whether a violation of a statute was a proximate cause of the accident." *Rodriguez*, 191 Mich App at 488.

Because there is evidence from which reasonable persons could conclude that Myers's negligence was a cause of the accident, proximate cause is an issue for the trier of fact, *Rodriguez*, 191 Mich App at 488, as is comparative negligence, MCL 600.6304(1)(b) and (2). Accordingly, we conclude that the trial court erred in granting defendants' motion for summary disposition based on its finding that Murphy was more than 50% at fault.

---

[3] Michigan Department of Transportation, *Signal Enhancements* <https://www.michigan.gov/mdot/travel/safety/road-users/signals> (accessed October 6, 2023).

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Sima G. Patel