*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NATHAN SCHLICKER, Personal Representative of the ESTATE OF MICHAEL SCHLICKER,

        Plaintiff-Appellant,

v

FREDERICK KANICKI,

        Defendant-Appellee.

UNPUBLISHED
December 05, 2025
9:00 AM

No. 371043
Bay Circuit Court
LC No. 2023-003628-NI

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

In this wrongful-death action, plaintiff, as personal representative of the estate of Michael Schlicker (the decedent), appeals by right the trial court's order granting summary disposition in favor of defendant, Frederick Kanicki, under MCR 2.116(C)(10). Considering the evidence in the light most favorable to plaintiff, we conclude that there are genuine issues of material fact whether defendant was negligent and whether the decedent was more than 50% at fault. We vacate and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from a fatal accident involving an automobile and a pedestrian in Bay County. On December 31, 2021, at approximately 6:44 p.m., the decedent walked out of his home located on the south side of Munger Road, walked down his driveway, and crossed the two-lane road toward JB's Market, which was located on the north side of Munger directly across the street from his home. According to independent eyewitnesses, the decedent had almost completely crossed both lanes of Munger Road when he was struck by defendant's vehicle, which was traveling westbound on Munger. There was not a crosswalk or traffic control device where the accident occurred. The road conditions were dry and clear. It was dark, but there was outdoor lighting at JB's Market. The decedent was wearing dark clothing.

Defendant maintained that he was looking ahead as he drove west on Munger Road, and the decedent "jumped right out in front of [him]." Defendant clarified that the decedent did not jump; rather, "he was right there." Defendant contended, "I could do nothing." Defendant testified

-1-

that he first noticed the decedent "[w]hen he was in front of my truck, when I hit him." Defendant asserted that the decedent was not within his view at any point before striking him in the westbound lane. The speed limit on Munger Road is 35 mile per hour. Defendant testified that he "[h]ad to have been [driving] around 35 or lower" because he typically drove below the posted speed limit. The headlights were activated on defendant's truck at the time of the accident. Defendant denied being on his cellphone or distracted at the time of the impact. Defendant claimed that he attempted to apply his brakes or otherwise avoid the collision, but he did not honk the horn because "[t]here wasn't enough time." Although the evidence reflects that there was a vehicle with its headlights on in the driveway of JB's Market preparing to pull out onto Munger Road, defendant did not notice that vehicle before the impact.

Defendant's son, Craig, who was seated in the front passenger seat of defendant's vehicle, also maintained that the decedent "just appeared." He was unable to state which direction the decedent was coming from. He testified that the collision "happened so suddenly there was no room for warning," and that he did not see the decedent until he was on the hood of defendant's vehicle. Consistent with defendant, Craig testified that defendant's headlights were on, defendant was not speeding,[1] and that defendant was not distracted. When Craig was asked whether defendant braked or tried to avoid the accident, he responded, "There was no way to avoid it. He was there. There wasn't someone walking. He was there." Craig further maintained that the decedent's body came to rest on the south side of Munger Road—the same side as the decedent's home.

There were two independent eyewitnesses to the accident—Lisa VanWormer and her 14-year-old daughter, Emma. Emma was driving,[2] and Lisa was in the front passenger seat. As Emma was preparing to make a left turn out of JB's Market's parking lot onto Munger Road, she observed the decedent exit his home across the road and take a few steps on his driveway. Emma looked for oncoming traffic. She observed a vehicle to her left near a church hall, which she guessed was 75 to 80 yards away. She turned her focus back to the decedent. She watched him walk down his driveway and start to cross Munger Road at a "pretty slow" pace. Emma testified that she "probably had time to pull out" onto the road, but she did not because she could see the decedent crossing the road. The decedent had nearly completed his crossing and was close to the fog line on the western edge of Munger Road when defendant struck him with "the right headlight side of the truck." Emma was unable to estimate defendant's speed—her attention was focused on the decedent, not defendant's vehicle. She testified that the decedent

> was just looking straight, and so I was obviously like watching him. 'Cause he was getting pretty close to our car, and I didn't know if he was going to try to come up to our car, or whatnot, so I was just looking at him the whole time to watch what he was doing.

Emma did not observe the decedent turn his head to the left or right before entering the roadway, but acknowledged that he could have done so while she was looking at defendant's vehicle to her

---

[1] Craig did not know the speed limit on Munger Road where the accident occurred.

[2] Emma had her learner's permit.

left. Emma did not look back at defendant's vehicle between the time she initially observed it down the road by a church hall and the time of the impact, but opined that defendant did not do anything wrong.

Lisa described the accident as follows:

[W]e were waiting to exit. We were going to turn left, and we could see a gentleman coming across the street from the house through the dark driveway of his.

And I had seen he was putting his coat on. He had a dark coat, dark pants, and he was putting his coat on, and he was coming right towards the party store, but I had took [sic] my eyes off of him because there was a car coming and I wanted to make sure that my daughter Emma wasn't going to pull out in front of the car.

So I had turned my head, and then at that time when the car came we heard the crash, we heard the hit . . . .

Lisa stated that people came "running" out of a nearby bar after the accident "[b]ecause everybody heard the hit, they heard the loud . . . the sound." Lisa was focused on the decedent and did not see the impact, but opined that defendant was not speeding. She further opined that defendant did not do anything wrong and it was "a freak accident."

Bay County Deputy Sherriff Brett Dobbins responded to the accident scene. He observed the decedent on the western edge of Munger Road—over the fog line and off the roadway. He noted that there were no tire impressions in the road and no noticeable damage to the front end of defendant's truck. Deputy Dobbins testified that "the lighting from that area comes almost mainly from streetlights, and specifically that area of JB's Market. It's outside lighting." He described the area as "dim at best on a normal day when there's not much traffic." After speaking with defendant and the witnesses, Deputy Dobbins viewed surveillance video from JB's Market. The decedent could be seen crossing the street quickly, "and then all you can see is headlights, and then the incident happens where [defendant] strikes him." Deputy Dobbins, who had no formal training in accident reconstruction, opined that defendant was not violating any basic speed laws and did not have an opportunity to stop before striking the decedent. On the basis of the video footage, his observations of the accident scene, and statements from defendant and the witnesses, Deputy Dobbins opined that the decedent was at fault for "not yielding to the right-of-way of traffic, as in he didn't cross at a crosswalk, he didn't cross when he should have or during an open time, just furthering that [defendant] had no time to stop."

Plaintiff brought a claim for wrongful death under MCL 600.2922 alleging that defendant operated his vehicle in breach of his statutory and common-law obligation to drive safely by driving at an excessive rate, failing to maintain a proper lookout, and failing to maintain a clear stopping distance. Defendant moved for summary disposition under MCR 2.116(C)(10) arguing that he was not negligent but was instead confronted with a sudden emergency, and also that the decedent was more than 50% at fault. Plaintiff responded that there was evidence to support the contention that defendant had an opportunity to observe the decedent with sufficient time to avoid him, and that discrepancies in the testimony regarding the direction the decedent was walking, and

where in the road he was hit, created questions of material fact. Plaintiff also argued that the evidence that the decedent was visible to the witnesses before the accident, and the lack of evidence that defendant applied the brakes, supported the contention that the decedent's comparative fault did not exceed 50%.

The trial court granted defendant's motion, reasoning:

> Well, it was dark, and the car had its headlights on so [the decedent] had every opportunity to see the oncoming car just like the—the other witnesses on the opposite side of the road . . . did.

> So, I believe that this is a classic case of a sudden emergency. It was unavoidable and . . . there's nothing in dispute that would allow this to go to the jury.

> Even if it did under these circumstances, I believe that there's no genuine issues of material fact as to [the decedent] being more than 50 percent at fault. So, on either of those bases, I think summary disposition is warranted.

> It's an unfortunate accident but on the record that we have, I don't see anything that indicates that . . . [defendant] . . . could do anything to avoid the accident. [The decedent] was in a position to see the oncoming car from the darkness that he was in.

This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). A court "is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Id*. "[S]ummary disposition is rarely appropriate in cases involving questions of credibility, intent, or state of mind." *In re Handelsman*, 266 Mich App 433, 438; 702 NW2d 641 (2005). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

## III. ANALYSIS

Plaintiff asserts that the trial court erred by concluding that there was no genuine issue of material fact whether defendant could have avoided the accident and that the decedent was more than 50% at fault. We agree.

## A. DEFENDANT'S NEGLIGENCE

To succeed on a negligence claim, a plaintiff must demonstrate that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v Sears, Roebuck and Co,* 492 Mich 651, 660; 822 NW2d 190 (2012) (cleaned up). It is well established that Michigan drivers have many statutory and common law duties:

> Many duties are imposed upon the drivers of motor vehicles upon public streets and highways. Some result from express statutory requirements to observe certain speed limits, to stop for certain traffic signals and signs, or, under certain circumstances, to yield the right-of-way, violations of which constitute negligence per se. Other duties are inherent in the exercise of that due care which connotes freedom from negligence as defined by the courts. Among the latter are the duties to maintain a reasonable and proper lookout, to see what is plainly there to be seen and give it due heed, and, before proceeding, from a suitable observation of conditions then and there existing, to form a reasonable belief that it is safe to proceed. [*City of Kalamazoo v Priest*, 331 Mich 43, 47; 49 NW2d 52 (1951) (citation omitted).]

Defendant had a duty to exercise reasonable care and caution while operating his vehicle. See *Zarzecki v Hatch*, 347 Mich 138, 141; 79 NW2d 605 (1956). The duty to exercise reasonable care and caution requires a driver to recognize the conditions and circumstances of travel. *Ashworth v Detroit*, 293 Mich 397, 400–401; 292 NW 345 (1940). "[A] driver shall not operate his vehicle so fast that he cannot bring it to a complete stop within that distance ahead of him in which he can clearly perceive any object that might appear in his path." *Cole v Barber*, 353 Mich 427, 431; 91 NW2d 848 (1958); see also MCL 257.627(1) (stating that a person operating a vehicle should do so at a careful and prudent speed that would allow the driver to stop within the assured, clear distance ahead). "[A]utomobile drivers must notice persons in the street, must use reasonable and ordinary care not to run down pedestrians on the highway, [and] must obey statutes governing the use of automobiles[.]" *Birkhill v Todd*, 20 Mich App 356, 360; 174 NW2d 56 (1969).

Once duty is established, the fact-finder determines whether there was a breach of the duty and what constitutes reasonable care under the circumstances. *Meyers v Rieck*, 509 Mich 460, 471; 983 NW2d 747(2022); see also *Riddle v McLouth Steel Products Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992) ("Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury. The jury must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent.") (citation omitted). If a motorist fails to observe a pedestrian who can be seen coming into his or

her path and fails to stop when he or she is capable of doing so, a question of fact exists regarding whether the driver was negligent. *Johnson v Hughes*, 362 Mich 74, 77-78; 106 NW2d 223 (1960).

In moving for summary disposition, defendant argued—and the trial court agreed—that the decedent's presence in the roadway constituted a sudden emergency. Violation of the assured clear distance statute, MCL 257.627(1), constitutes "negligence per se." *Vander Laan v Miedema*, 385 Mich 226, 231; 188 NW2d 564 (1971). "[E]vidence of violation of a penal statute creates a rebuttable presumption of negligence." *Klanseck v Anderson Sales & Service, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986). But a statutory presumption of negligence "may be rebutted by showing the existence of a sudden emergency." *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139; 753 NW2d 591 (2008). "The sudden-emergency doctrine applies when a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making." *Id*. at 139-140 (cleaned up). In order for the sudden-emergency doctrine to apply, "the circumstances attending the accident must present a situation that is unusual or unsuspected." *Vander Laan*, 385 Mich at 232 (cleaned up). "The term 'unusual' is employed here in the sense that the factual background of the case varies from the everyday traffic routine confronting the motorist. Such an event is typically associated with a phenomenon of nature." *Id*. " 'Unsuspected' on the other hand connotes a potential peril within the everyday movement of traffic." *Id*. To be unsuspected, "it is essential that the potential peril had not been in clear view for any significant length of time, and was totally unexpected." *Id*. For example, a vehicle suddenly stopped in the act of pushing a disabled vehicle on the highway in the dark may qualify as an unsuspected peril. *McKinney v Anderson*, 373 Mich 414, 419; 129 NW2d 851 (1964). On the other hand, suddenly noticing a stopped vehicle upon returning one's attention forward after glancing in the rearview mirror does not qualify. *Moore v Spangler*, 401 Mich 360, 382; 258 NW2d 34 (1977); *Vander Laan*, 385 Mich at 233. The sudden-emergency doctrine "is a logical extension of the 'reasonably prudent person' rule . . . ." *Szymborski v Slatina*, 386 Mich 339, 341; 192 NW2d 213 (1971). Thus, the question is whether defendant acted as a "reasonably prudent person" when facing the emergency, giving consideration to all of the circumstances regarding the accident. *Id*.; see also *Baker v Alt*, 374 Mich 492, 496; 132 NW2d 614 (1965) ("In actuality, the doctrine of 'sudden emergency' is nothing but a logical extension of the 'reasonably prudent person' rule.").

Viewing the facts in the light most favorable to plaintiff, there is a genuine issue of material fact whether the decedent was in "clear view for any significant length of time," and thus "unsuspected." *Vander Laan*, 385 Mich at 232. Despite the low light, Emma observed the decedent for what "felt like 30 seconds, but in reality [was] probably ten seconds." During that time, she watched the decedent walk out of his home, walk down his driveway, and walk across both lanes of traffic. Emma saw defendant's vehicle approaching down the road to her left and testified that she had sufficient time to make her left turn, but did not pull out onto Munger because she could see the decedent crossing the road. Emma testified that the decedent had almost completed his crossing and was nearly off of the roadway when "out of nowhere the truck came and hit [the decedent]" with the right, front passenger side of the vehicle. Emma's mother, Lisa, also observed the decedent crossing the road. And Deputy Dobbins observed the decedent crossing Munger on the surveillance video.

Although Emma, Lisa, and Deputy Dobbins speculated that defendant was unable to avoid the collision, this speculation is insufficient to establish that defendant did not actually have time to observe the decedent and take evasive action. None of these witnesses have formal training in

accident reconstruction. Further, Emma admitted that her attention was focused on the decedent, not defendant's vehicle, and she did not look at defendant's vehicle between the time she initially observed it down the road by a church hall and the time of the impact. Lisa admitted that she was also focused on the decedent and then took her eyes off of him to look at the oncoming car. Yet, Lisa did not actually witness the impact because it happened as she had turned her head.

Defendant maintained that he did not see the decedent until he was in front of his truck and claimed he "could do nothing." But there are discrepancies in his testimony. When defendant was asked when he first noticed the decedent, he stated, "When he was in front of my truck, when I hit him." And when defendant was asked whether the decedent was walking toward JB's Market, he responded, "I don't know that." But then defendant insisted, "When I hit him he was walking towards his house." Even when defendant was confronted with Emma and Lisa's testimony regarding the decedent's direction of travel, defendant responded, "Not when I hit him. He was going the other way. He was going towards his house." Although defendant asserted he did not have time to react, he later contradicted himself and claimed that he attempted to avoid the collision. Defendant further contended that he was not distracted, but admitted that he did not notice the VanWormer's vehicle waiting to pull out onto Munger Road. These discrepancies are relevant to defendant's credibility.

Defendant's son, Craig, also maintained that the decedent "just appeared" and claimed that there was nothing that defendant could have done to avoid the collision. Although Craig asserted that defendant was not speeding, he did not know the speed limit on Munger. He also contradicted defendant's testimony, stating that defendant did *not* apply the brakes before the impact because "[t]here was zero reaction time." Craig testified that he was looking forward before the impact, but, like defendant, he did not notice the VanWormer's vehicle waiting to pull out onto Munger Road. Craig maintained that the decedent's body came to rest on the south side of Munger Road. Yet, Deputy Dobbins testified that the decedent was on the northern edge of Munger Road—in front of JB's Market. Deputy Dobbins also noted that Craig "was very protective of [defendant]" during his interview, which is relevant to Craig's bias and credibility.

Viewing the evidence in a light most favorable to plaintiff, there is a genuine issue of material fact whether there was a sudden emergency and whether defendant acted as a reasonably prudent person. These are questions for the trier of fact to resolve. See *Persail v Mosley*, 343 Mich 78, 80; 72 NW2d 241 (1955) ("A question of fact was presented as to where plaintiff had come from, whether [the defendant] could have seen him in time to avoid the accident, and whether his failure to do so constituted negligence which was a proximate cause of the accident."); see also *Cetera v Mileto*, 342 Mich App 441, 448; 995 NW2d 838 (2022) ("A trial court may not assess credibility, weigh the evidence, or resolve factual disputes, and when material evidence conflicts, it is not appropriate for the court to grant the motion for summary disposition.").

### B. DECEDENT'S COMPARATIVE FAULT

The trial court further erred by finding that there was no genuine issue of material fact that the decedent was more than 50% at fault for the accident and concluding that the estate was barred from recovery under MCL 500.3135(2)(b), which provides: "Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault."

"The doctrine of comparative fault requires that every actor exercise reasonable care." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 33; 761 NW2d 151 (2008). "The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration." *Rodriquez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991). Because there is evidence from which reasonable persons could conclude that defendant's negligence was a cause of the accident, proximate cause is an issue for the trier of fact, *Rodriguez*, 191 Mich App at 488, as is comparative negligence, MCL 600.6304(1)(b) and (2). Accordingly, we conclude that the trial court erred by granting defendants' motion for summary disposition on the basis of its finding that the decedent was more than 50% at fault.

Vacated and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Kathleen A. Feeney